# NO. 12-06-00265-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EDWARD LEWIS VON HOHN, II,* *APPELLANT* | § | *APPEAL FROM THE 307TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT OF* |
| *SUSAN JOAN VON HOHN, AND IN THE* *INTEREST OF H.B.V.H. AND A.S.V.H.,* *MINOR CHILDREN,* | | |
| *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *OPINION*

Appellant Edward Lewis Von Hohn, II appeals the trial court's final decree of divorce. On appeal, Edward presents three issues. We affirm in part and reverse and remand in part.

## BACKGROUND

Edward and Susan Joan Von Hohn were married on June 28, 1997 and are the parents of two children, H.B.V.H. and A.S.V.H. Susan filed for divorce in July 2004, and the parties agreed that Susan be appointed sole managing conservator of the children and that Edward be appointed possessory conservator. Edward was also ordered to pay child support. The parties could not agree on a division of their community property, particularly the community property interest, if any, in Edward's ownership interest in the law firm of Nix, Patterson & Roach (the "Nix Law Firm").

Edward and the other partners of the Nix Law Firm signed a partnership agreement. The partnership agreement allotted each partner a certain number of units of participation, assigned each

partner an undivided profits account and a capital account, and included a formula for calculating a partner's interest in the partnership as of the date of his death and as of the effective date of his retirement, withdrawal, or expulsion. The partnership agreement did not provide a method of valuing a partner's interest in the event of his divorce. The trial court granted, in part, Edward's motion to exclude the expert testimony of James C. Penn, concluding that the proper measure of the value of the community property interest in the Nix Law Firm included methods other than those set forth in the partnership agreement. However, the trial court found that no more than two years of the Nix Law Firm's future earnings should be considered in valuing Edward's interest in the firm. Ultimately, a jury found that the value of Edward's interest in the Nix Law Firm was $4.5 million dollars, subject to taxes. This appeal followed.

## EXPERT WITNESS

In his second issue, Edward argues that the trial court erred in failing to exclude the testimony of Susan's expert, James C. Penn. He contends that Penn's testimony did not meet the relevance and reliability requirements of rule 702 of the Texas Rules of Evidence, was not based on a reliable foundation, and was based on unreliable methods, analysis, and principles. Further, he argues that there was no evidence that Penn's methodology in valuing a business, particularly a law firm, was used by other valuation experts.[1]

### Standard of Review

The qualification of a witness as an expert is within the trial court's discretion. ***Broders v. Heise***, 924 S.W.2d 148, 151 (Tex. 1996). An appellate court will not disturb a trial court's exercise of its discretion absent clear abuse. ***Id.*** "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." ***Id.*** (quoting ***E.I. du Pont de Nemours & Co. v. Robinson***, 923 S.W.2d 549, 558 (Tex. 1995)). Further, the party offering the expert's

---

[1] Edward also argues that Penn's testimony did not assist the jury in resolving disputed fact issues, served only to confuse, mislead, and prejudice the jury, and that the probative value of Penn's testimony was substantially outweighed by the danger of unfair prejudice and confusion of the jury. Edward's brief contains citations to case law on the standards of admissibility of expert opinions, but does not contain a clear and concise argument for these contentions or citations to the record. *See* TEX. R. APP. P. 38.1(h). Therefore, we do not address these arguments. Further, Edward contends that the "analytical gap" was too great between the relevant underlying data and Penn's expert opinion, and that Penn's methodology is contrary to current case law. We will address these arguments later in this opinion.

2

testimony bears the burden to prove that the witness is qualified under rule 702 of the Texas Rules of Evidence. *Id.*

**Applicable Law**

Rule 702 contains three requirements for the admission of expert testimony: (1) the witness must be qualified, (2) the proposed testimony must be scientific, technical, or other specialized knowledge, and (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. TEX. R. EVID. 702; *see also Robinson*, 923 S.W.2d at 556. In order to constitute the type of knowledge that will assist the trier of fact, the proposed testimony must also be relevant and reliable. *Robinson*. 923 S.W.2d at 556. The trial court is responsible for making the preliminary determination of whether the proffered testimony meets the standards. *Id.* Rule 702's language makes no pertinent distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999). Thus, any such knowledge might become the subject of expert testimony. *Id.*, 526 U.S. at 147, 119 S. Ct. at 1174.

To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Robinson*, 923 S.W.2d at 556 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Additionally, any such evidence that is not grounded "in the methods and procedures of science" is no more than "subjective belief or unsupported speculation." *Robinson*, 923 S.W.2d at 557 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993)). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702. *Id.* Nonetheless, the inquiry into the reliability of an expert's testimony is a "flexible one." *Nenno v. State*, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998) (quoting *Daubert*, 509 U.S. at 594, 113 S. Ct. at 2797).

There are many factors that a trial court may consider in making the threshold determination of admissibility under Rule 702, including (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses that have been made of

the theory or technique. **Robinson**, 923 S.W.2d at 557. If the trial court determines that the proffered testimony is relevant and reliable, it must then determine whether to exclude the evidence because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. **Id.**

## Analysis

Before trial, Edward filed a motion to exclude Susan's expert, James C. Penn, who was to testify regarding Penn's valuation of the Nix Law Firm. The trial court held a hearing on Edward's motion, during which Penn testified. The trial court partially granted Edward's motion finding that the proper measure of the value of the community interest in the Nix Law Firm could include methods other than those set forth in the partnership agreement. The court allowed Penn to testify regarding his valuation based on withdrawal value, the asset approach, and/or the income approach. However, the court ordered that Penn limit any valuation utilizing the income approach to income reasonably expected to be collected within two years from the valuation date.

We will not disturb the trial court's decision to allow Penn to testify absent clear abuse. *See* **Broders**, 924 S.W.2d at 151. In his brief, Edward contends that Penn's methodology was unreliable and flawed and, as support, points to six statements made by Penn or matters taken into consideration by Penn in his valuation.[2] These statements were not part of Penn's testimony at the **Daubert** hearing, but instead, were made by Penn at a prior hearing on Susan's motion for additional discovery. Edward complains that Penn could not recall a specific instance when he had taken specific cases, valued them, and then adjusted the assets of a law firm's balance sheet. He also points out that Penn testified he had never used information from patent cases in valuations of law firms. However, in the **Daubert** hearing, Penn stated that he had been performing business valuations for approximately fifteen years and had been an expert witness for a professional business valuation about seventy-five to one hundred times. According to his curriculum vitae, he had been a speaker at a variety of seminars on topics such as valuations, commercial and personal goodwill,

---

[2] Additionally, Edward complained that Penn's methodology was flawed and unreliable because Penn relied on another expert, David William Carstens. According to Penn, Carstens stated it was reasonable to assume that the pending cases would have a type of payment similar to the ones that had settled. We will address this argument later in this opinion.

4

and business valuation of a partner's interest in a law firm. Penn stated that he had previously testified in court regarding valuation of a partnership interest using the income approach and had relied on the types of projections used here in valuing a contingency fee practice in Dallas, Texas.

Trial courts must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion. *Broders*, 924 S.W.2d at 152. The proponent of the testimony has the burden to show that the expert possesses special knowledge as to the very matter on which he proposes to give an opinion. *See id.* at 152-53 (quoting 2 RAY, TEXAS LAW OF EVIDENCE: CIVIL AND CRIMINAL § 1401 at 32 (Texas Practice 3d ed. 1980)). Further, the expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *See Broders*, 924 S.W.2d at 153. In this case, Penn had experience performing business valuations, had valued a partnership interest using the income approach, and had valued a contingency fee practice by relying on the same type of projections he used in this case. Although he had never used information from a patent case in valuing a law firm, the specific issue in this case was valuation of a partner's interest in a law firm, for which Penn had specialized knowledge, skill, experience, training, or education. *See id.* at 152-53. Thus, the trial court did not abuse its discretion in allowing Penn to testify as an expert.

Edward also complains that Penn stated that he needed someone to review the Nix Law Firm's case files and give him some range of values and some estimated time frame as to when those cases might settle. Otherwise, Penn opined, his analysis and valuation would not be thorough and complete. He also agreed that he would not value the Nix Law Firm's cases, and stated that was the role of the court appointed master in chancery. He believed that if the master considered the law firm's pleadings, responses to pleadings, and the case files, the master would realize that she was receiving "one side of the story," and would make some type of determination regarding that analysis. He believed that even "one side of the story" provided enough information for the master to give him a range of potential settlements.

According to the record, the trial court appointed a master in chancery in 2005 to perform certain duties including reviewing the Nix Law Firm trust accounts, employment contracts, settlement sheets on cases that had been settled but proceeds not yet distributed, and potential cases

that the firm anticipated being filed within the next year. All of the master's duties and all of the documents reviewed were to remain confidential and made known only to the trial court in a manner that did not include client names or client identifying information. A *Daubert* inquiry must be "tied to the facts" of a particular case. *See Kumho Tire Co.*, 526 U.S. at 149, 119 S. Ct. at 1175 (quoting *Daubert*, 509 U.S. at 594, 113 S. Ct. at 2786). Penn stated in the prior hearing that because of the appointment of a master, he relied upon the master's expert review of the Nix Law Firm's files and her range of case values, settlements, and potential settlements. Edward states that these "dynamics" have been shown to be improper or unreliable. However, his brief does not contain a clear and concise argument to support this statement or to support his contention that Penn's reliance on the master rendered his testimony unreliable. *See* TEX. R. APP. P. 38.1(h).

Moreover, Penn testified in the *Daubert* hearing that he relied on the expert report and documents provided by David William Carstens, a patent attorney. Additionally, he received information from Edward and the Nix Law Firm as a result of discovery orders regarding settlement agreements, contracts between the Nix Law Firm and clients, and licensing agreements. Significantly, Penn did not mention any reliance on the master's reviews in his methodology. Further, Edward complains that Penn could not, "as we sit here today," give Edward's attorney a peer review paper that suggested the asset approach was proper in valuing a law firm. However, we note that in the *Daubert* hearing, Penn specifically rejected the asset approach and testified that the income approach was appropriate for most professional practices because it is the best indicator of value. Finally, Edward argues that there was no evidence that Penn's methodology in valuing a business, particularly a law firm, was used by other valuation experts. At the *Daubert* hearing, Penn testified that he valued the Nix Law Firm in a divorce case approximately five years prior and used the same methodology as in this case. He also stated that both he and the opposing expert in the previous divorce case used the income approach to value the partnership interest in the Nix Law Firm. Thus, these complaints are without merit.

Based upon our review of the record, we conclude that, under the facts of this particular case, the trial court did not abuse its discretion in allowing Penn to testify regarding his valuation of Edward's interest in the Nix Law Firm. *See Kumho Tire Co.*, 526 U.S. at 149, 119 S. Ct. at 1175. Accordingly, Edward's second issue is overruled.

As part of his first issue, Edward argues that the trial court erred in its interpretation and application of the law regarding the division of a community property interest in a professional partnership. He contends that his interest in the Nix Law Firm was defined by the partnership agreement and that the community estate was not entitled to a greater interest than that to which he was entitled in the firm's commercial goodwill.

**Applicable Law**

Professional goodwill attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability, and would be extinguished in the event of the professional's death, retirement, or disablement. *Keith v. Keith*, 763 S.W.2d 950, 952 (Tex. App.–Fort Worth 1989, no writ). Such professional goodwill is not property in the estate of the parties and, therefore, not divisible upon divorce. *Id.* To the extent that goodwill exists in the professional practice separate and apart from the professional's personal ability and reputation, that goodwill has a commercial value and is community property subject to division upon divorce. *Finn v. Finn*, 658 S.W.2d 735, 740 (Tex. App.–Dallas 1983, writ ref'd n.r.e.). In order to determine whether goodwill attaches to a professional practice that is subject to division upon divorce, we apply a two prong test: (1) goodwill must be determined to exist independently of the personal ability of the professional spouse; and (2) if such goodwill is found to exist, then it must be determined whether that goodwill has a commercial value in which the community estate is entitled to share. *Id.* at 741.

**Analysis**

In partially granting Edward's motion to exclude Penn, the court found that the proper measure of the value of the community interest in the Nix Law Firm could include methods other than those set forth in the partnership agreement. In the court's charge to the jury, the court stated that, although the jury could not consider personal goodwill or time and labor to be expended after the divorce, the jury could consider the commercial goodwill, if any, of the firm, the partnership agreement, and the amendments to the partnership agreement.

We must determine if the trial court erred in determining that the jury could consider the commercial goodwill, if any, of the Nix Law Firm. As to the two prong test for determining if

7

commercial goodwill attaches to a professional practice, Edward does not dispute that the first prong has been met, i.e., that goodwill exists independently of the personal ability of the professional spouse. *See Finn*, 658 S.W.2d at 741. However, he argues that the goodwill does not have a commercial value in which the community estate is entitled to share and directs us to the facts and analysis in *Finn*. *See id.* In *Finn*, the trial court found that the husband's law firm had goodwill independent and apart from the professional ability of the husband. *Id.* at 741. However, the pertinent question was whether the community estate was entitled to share in the value of the law firm's commercial goodwill. *Id.* The court determined that the community estate was not entitled to a greater interest than that to which the husband was entitled in the firm's goodwill. *Id.* According to the court, the extent of the husband's interest was governed by the partnership agreement. *Id.*

According to the partnership agreement, if the husband in *Finn* had died or withdrawn from the firm, he would have been entitled to certain amounts based on his capital account, undistributed earned income, and interest in the firm's reserve account. *Id.* at 741-42. The court acknowledged that the partnership agreement did not provide any compensation for accrued goodwill to a partner who ceased to practice law with the firm, nor did it provide any mechanism to realize the value of the firm's goodwill. *Id.* at 742. In *Finn*, the only mechanism through which the husband could realize the value of the accrued goodwill was through continuing to practice law as a member of the firm. *Id.* Thus, the court found, such realization in the future is no more than an expectancy dependent on the husband's continued participation in the firm and, therefore, his interest in the firm's goodwill was not property of the community estate. *Id.*

The decision in *Finn* was en banc with four justices joining the majority opinion, two justices concurring, and five justices dissenting. *Id.* at 735. Justice Stewart wrote a concurring opinion, stating that the firm's goodwill is an asset of the partnership entity and, thus, does not belong to either the separate or community estate of the individual partners. *Id.* at 749 (Stewart, J., concurring). According to Justice Stewart, the partnership agreement did not control the value of the individual partnership interests. *Id.* The asset being divided was the husband's interest in the partnership as a going business, not his contractual death benefits or withdrawal rights. *Id.* The formula in the partnership agreement may represent the present value of the husband's interest, but

should not preclude a consideration of other facts. *Id.* The value of the husband's interest, Justice Stewart concluded, should be based on the present value of the partnership entity as a going business, which would include consideration of partnership goodwill. *Id.* Goodwill is property and, although intangible, is an integral part of a business. *Id.*

The Fort Worth court of appeals agreed with the concurrence in *Finn*, concluding that because a partnership is not being terminated, the provision in the partnership agreement determining the value of the business in the event of the partner's withdrawal or death is not applicable. *Keith*, 763 S.W.2d at 953. The court stated that the formula in a partnership agreement with respect to death or withdrawal is not necessarily determinative of the value of a spouse's interest in an ongoing partnership as of the time of divorce. *Id.* In another case, the dissent noted that none of the triggering events specified in the agreement had occurred and that, until such event, a trial court should not be limited to the formula in the agreement when determining the value of an individual's share upon divorce. *R.V.K. v. L.L.K.*, 103 S.W.3d 612, 623 (Tex. App.–San Antonio 2003, no pet.) (Marion, J., dissenting). The dissent also stated that the value of the party's interest should be based on the present value of the entity as a going business, taking into consideration the limitations imposed by commercial goodwill. *Id.*

In this case, Edward became a partner in the Nix Law Firm in 1999 and signed the Fourth Amendment to the Nix Law Firm Partnership Agreement. The original partnership agreement specified the payment for a partner's interest in the partnership in the event of the partner's death, withdrawal, retirement, or expulsion. If a partner died or withdrew, he would be entitled to any unpaid draw, his capital account, and his undivided profit accounts, based upon his units of participation. At the time of trial, Edward testified that he was a partner in the Nix Law Firm, that he had not withdrawn, and that he had no plans to withdraw.

Based on these facts, we agree with the concurrence in *Finn* that the Nix Law Firm partnership agreement does not control the value of the individual partnership interests in the event of a divorce. *See Finn*, 658 S.W.2d at 749. The Nix Law Firm was an ongoing partnership as of the time of divorce, Edward had not died nor had he withdrawn from the partnership, and, thus, none of the triggering events specified in the partnership agreement had occurred. *See R.V.K.*, 103 S.W.3d at 623; *Keith*, 763 S.W.2d at 953. Consequently, the formula in the partnership agreement

9

was not determinative of the value of Edward's interest in the Nix Law Firm. *See Keith*, 763 S.W.2d at 953. Therefore, the trial court did not err when it determined that the proper measure of the value of the community interest in the Nix Law Firm could include methods other than those set forth in the partnership agreement. Accordingly, we overrule that portion of Edward's first issue regarding the trial court's interpretation of the partnership agreement.

**FUTURE EARNINGS**

As part of his first issue, Edward contends that the trial court erred in allowing future earnings to be used to determine the commercial goodwill of the Nix Law Firm. More particularly, he argues that neither case law nor current valuation methodology permits commercial goodwill to be valued using speculative future income streams.

**Applicable Law**

In a decree of divorce, a court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001(Vernon 2006). We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.–Dallas 2005, pet. denied); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.–San Antonio 2006, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Garza*, 217 S.W.3d at 549; *Moroch*, 174 S.W.3d at 857. Moreover, we should reverse a court's division of property only if the error materially affects the court's just and right division of the property. *Henry v. Henry*, 48 S.W.3d 468, 475 (Tex. App.–Houston [14th Dist.] 2001, no pet.). Similarly, errors in the valuation of property do not require reversal unless, because of such errors, the division made by the trial court is manifestly unjust. *Cook v. Cook*, 679 S.W.2d 581, 585 (Tex. App.–San Antonio 1984, no writ). However, once reversible error affecting the "just and right" division of the community estate is found, an appellate court must remand the entire community estate for a new division. *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.–San Antonio 2004, pet. denied) (quoting *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985)).

A spouse is not entitled to a percentage of his or her spouse's future earnings. *Smith v. Smith*, 836 S.W.2d 688, 692 (Tex. App.–Houston [1st Dist.] 1992, no writ). A spouse is only

10

entitled to a division of property that the community owns at the time of divorce.  ***Id.***  All assets of the community estate are valued as of the time of dissolution of the marriage.  ***Finn***, 658 S.W.2d at 749 (Stewart, J., concurring). Further, a jury must have an evidentiary basis for its findings.  ***Salinas v. Rafati***, 948 S.W.2d 286, 289 (Tex. 1997).

## Analysis

At trial, Penn testified regarding his valuation of Edward's interest in the Nix Law Firm using the income approach.  He stated that he included the commercial goodwill of the firm, but excluded personal goodwill and future time, toil, and labor.  According to the trial court's instructions, he considered income reasonably expected to be collected by the Nix Law Firm within the next two years.  Penn valued Edward's interest in the general law firm at $1.5 million.  He testified that in this analysis, he considered the general law firm's historical operations and attempted to normalize income that would occur in the future, but deducted nonrecurring events, any Data Treasury[3] case income, and partner compensation.  Penn testified that Edward's interest in the settled Data Treasury cases was $400,000.00.  He stated that the settlement agreements with these defendants have two types of payment terms.  The first type of payment is fixed, and paid both "up front" in cash and over a specified number of years.  The second type of payment is based on a royalty rate to be paid in the future.  Consequently, he testified, some settlement money had been received while additional settlement money had yet to be received. For most of the settled defendants, he had a payment history based on their settlement and royalty agreements and was able to estimate payments to be received in the next two years.  However, two defendants had not begun making payments and, without such history, Penn refused to speculate and valued Edward's interest in these settled defendants at zero.

Using a royalty rate based on the prior settlement agreements, he valued Edward's interest in the pending but unsettled Data Treasury cases at $4.1 million dollars.  In this analysis, Penn focused on the four large defendants that would most likely settle in the next two years.  He also testified that if all the pending Data Treasury cases, including all the smaller defendants, settled in the next two years, Edward's interest would increase by $2.2 million dollars.  At the conclusion of

---

[3] According to Penn, the Data Treasury cases are "seminal type cases," analogous to the tobacco litigation.

11

the trial, the jury found that the value of Edward's interest in the Nix Law Firm was $4.5 million dollars, subject to taxes.

We must determine if there was some evidence to support the jury's valuation of Edward's interest. Penn's valuation of Edward's interest in the Nix Law Firm and the settled Data Treasury cases totaled $1.9 million. Edward's interest in the settled Data Treasury cases is based on settlement agreements that were executed before the date of divorce. According to Penn, Edward does not have to expend future time or labor to collect his interest in these proceeds. We agree, concluding that Edward's right to receive these proceeds is contractual and the amounts to be received are fixed or readily ascertainable. *See **Barraza v. Law Offices of Smith & Gopin***, 918 S.W.2d 608, 611 (Tex. App.–El Paso 1996, no writ) (concluding that one's rights in a contract and in the settlement proceeds are satisfied when payment is received); Randall B. Wilhite, *Practical Business Valuation*, *in* 30th ANNUAL MARRIAGE DISSOLUTION INSTITUTE 21-44 (2007) (stating that if "a case with a structured settlement has already settled, the amount of the settlement, and consequently the associated attorney's fees, are readily ascertainable" and that once the settlement is signed, the "right to receive funds is contractual"). Further, because no future time or labor is necessary to receive these proceeds, Edward's income from the settled Data Treasury cases is not future earnings. *See **Rathmell v. Morrison***, 732 S.W.2d 6, 18 (Tex. App.–Houston [14th Dist.] 1987, no writ)(concluding that the value of a company should exclude the time, toil, and talent to be expended following divorce).

Penn valued Edward's interest in the pending Data Treasury cases at $4.1 million with an additional $2.2 million for the other pending cases. Susan is not entitled to Edward's future earnings, and all assets of the community estate must be valued as of the date of divorce. *See **Smith***, 836 S.W.2d at 692; ***Finn***, 658 S.W.2d at 749 (Stewart, J., concurring). Penn admitted that no money had been received by the firm from the pending but unsettled Data Treasury cases. Revenue from these cases is no more than an expectancy interest and any money to be received constitutes future earnings to which Susan is not entitled. *See **Smith***, 836 S.W.2d at 692. There was no other evidence from which the jury could have concluded that Edward's interest in the Nix Law Firm totaled $4.5 million dollars.

Because Edward's future earnings are his separate property, which the trial court may not

12

divest, we conclude the property division is manifestly unjust. *See Licata v. Licata*, 11 S.W.3d 269, 277-78 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *Cook*, 679 S.W.2d at 585. Accordingly, we sustain that portion of Edward's first issue contending that future earnings could not be used in valuing his interest in the Nix Law Firm.

### DIRECTED VERDICT

In his third issue, Edward argues that the trial court erred in failing to grant his motion for a directed verdict at the conclusion of both parties' case in chief. More specifically, he contends that the only testimony offered in Susan's case in chief to support the valuation of his interest in the Nix Law Firm was unreliable and inconsistent with case law as noted above. Further, Edward argues that if Susan's expert testimony had been properly excluded, his expert's opinion would have been the only appropriate and legal testimony to support a proper valuation. Thus, he contends, the trial court erred in failing to instruct the jury to return a verdict consistent with his expert's valuation.

It is error for the trial court to instruct a verdict when a material issue is raised by the evidence. *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 440 (Tex. App.–Texarkana 1998, no pet.). If there is any conflicting evidence of a probative nature in the record, a determination of the issue is for the jury. *Id.* At the close of Susan's case in chief, Edward's attorney requested a directed verdict based on the fact that Penn excluded the partnership agreement and the effect of withdrawal on the valuation of the Nix Law Firm from his testimony. He stated that this was contrary to case law and that Penn did not establish himself as an expert on valuing patent cases. Edward's attorney requested the trial court enter a directed verdict, finding that the partnership agreement controlled the valuation of the Nix Law Firm and that Edward's interest should be calculated according to the withdrawal provisions. The trial court denied Edward's motion. At the conclusion of Edward's case in chief, his attorney requested a directed verdict along the same terms as his previous motion for directed verdict. Again, the trial court denied his motion.

In this case, we have already determined that the partnership agreement did not control the valuation of Edward's interest and that the trial court did not err in allowing Penn to testify. Thus, these bases for Edward's motions for directed verdict are without merit. Further, Susan's and Edward's experts differed on their valuation of Edward's interest in the Nix Law firm, the only

13

material issue at trial.  Because there is conflicting evidence on a material issue, the determination of the valuation of Edward's interest in the Nix Law Firm was for the jury to determine, and it would have been error for the trial court to have granted an instructed verdict.  *See **id.***  Accordingly, Edward's third issue is overruled.

### DISPOSITION

Having sustained a portion of Edward's first issue, we ***reverse*** the portion of the final decree of divorce dividing the marital estate and ***remand*** to the trial court to determine a just and right division of community property.  In all other respects, the trial court's judgment is ***affirmed***.

    SAM GRIFFITH    
Justice

Opinion delivered July 23, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

14