COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                          NO.
02-08-031-CV

 

 

BRADLEY S. MURRAY                                                          APPELLANT

 

                                                      V.

 

KAREN K. MURRAY                                                                APPELLEE

 

                                                  ------------

 

               FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

I. 
Introduction

In two issues, Appellant Bradley S. Murray (ABrad@)
challenges the trial court=s order
clarifying the 2003 decree of divorce from his ex-wife, Karen K. Murray (AKaren@).  We affirm the trial court=s order
as modified.

 

 

 








II. 
Factual and Procedural History

 On August
4, 2003, the trial court signed an agreed decree of divorce ending the marriage
of Brad and Karen.  Post-divorce
litigation began in 2007. We discuss only the details of the 2003 and 2007
proceedings that are necessary to the disposition of this appeal.

A.  Background Facts

Brad is an independent broker for Ameriplan.  Ameriplan is a multiple-level marketing
company that provides discounted rates on health services.  As an independent broker, Brad sells  monthly memberships in Ameriplan=s
discounted health plans and recruits other brokers to do the same.  The members and brokers recruited by Brad, as
well as members and brokers recruited by them, and so on, are Brad=s Adownline.@  At the time of the divorce, there were
thousands of members and brokers in Brad=s
downline.  His gross income was
approximately $27,000 per month.[1]

 








B.  Divorce Proceedings

The sole issue before the trial court during the
divorce proceedings was the division of the residual income generated by the
downline that existed as of the date of divorce, August 4, 2003.  During trial, Karen introduced evidence
that she and Brad had jointly built the business and that the downline was the
product of both her and Brad=s contributions to
the business.  Karen
argued that the downline, as of the date of divorce, should be treated as a
book of business and therefore, the residual income generated by that downline
should be divided monthly based on the agreed upon 60/40 split.[2]  Brad, however, urged the trial court to value
the business and to allow him the opportunity to buy Karen out; or, in the
alternative, to sell the business and split the proceeds 60/40.  The trial court ruled in favor of Karen and
signed an agreed decree of divorce that had been proposed by Brad=s
counsel.  Neither party appealed the
decree.  The divorce decree provides in
pertinent part:








The Court finds that
Bradley S. Murray is an independent contractor for Ameriplan USA and therefore
entitled to receive residual income based on business generated prior to August
4, 2003.  IT IS ORDERED AND DECREED that
Bradley S. Murray is awarded forty percent (40%) of said residual income and
Karen K. Murray is awarded sixty (60%) of said residual income. . . . IT IS
ORDERED AND DECREED that Bradley S. Murray will issue to Karen K. Murray a
check equal to Sixty percent of the monthly Residual Income based upon the book
of business as of August 4, 2003.

 

C. 
Clarification Proceedings

After the divorce, the amount
Karen received monthly began to steadily decline.  Consequently, in July 2007, she filed a
petition for enforcement alleging that Brad had violated the terms of the
decree or, in the alternative, that the decree was ambiguous and required
clarification.  The trial court held two
hearings on the matter, found that there was an ambiguity, and entered a
clarifying order.

In the order, the trial court
recognized that A[a] >book of
business= is an
identified group of persons or entities who are brokers in the AmeriPlan USA
business, and all of the commissions (current and future) earned by the brokers
in that group.@ 
The clarification also defined Aresidual
income@ as:

[T]he
stream of continuing payments that are earned by Brad and/or Karen from the
commissions (current and future) earned by the brokers within a book of
business.  Residual income arises from
all sources of income relating to or derived from an identified book of
business, including commissions earned by the brokers within that identified
book of business from any source whatsoever.

 

The order then divided Brad=s sources
of commissions into three categories:

[Group
A: This]
category represents the specific persons or entities that are identified as the
base and down-line brokers of Brad and Karen existing on the date of August 4,
2003.








[Group
B: This] category represents the new persons or entities that Brad alone
has developed as brokers after the date of August 4, 2003.

 

[Group C: This] category
represents those new persons or entities that were developed as brokers by the
brokers within the Group A category after the date of August 4, 2003.

Finally, the order awarded Karen
sixty percent of the residual income earned as a result of the income and
commissions that may be payable to, or received by, the brokers within Group A
from any source whatsoever, from and after the date of August 4, 2003; however,
the order also stated that Karen was not entitled to receive a share of the
residual income earned as a result of Group B or C=s
income.

Subsequently, Brad filed a
request for findings of fact and conclusions of law in addition to a motion for
new trial.  When the court did not file
findings or conclusions, Brad filed a notice of past due findings of fact and
conclusions of law.  The trial court
denied Brad=s motion for a new trial and
ultimately held that findings of fact and conclusions of law were not
appropriate.  This appeal followed.

III.  Standard of Review








We review the trial court=s ruling
on a motion for enforcement or clarification of a divorce decree under an abuse
of discretion standard.  In re
Marriage of McDonald, 118 S.W.3d 829, 832 (Tex. AppCTexarkana
2003, pet. denied).  The trial court
abuses its discretion when it (1) acts unreasonably, arbitrarily, or without
reference to any guiding rules or principles or (2) erroneously exercises its
power by making a choice outside the range of choices permitted the court by
law.  Id.  When, as here, the trial court makes no
separate findings of fact or conclusions of law, we draw every reasonable
inference supported by the record in favor of the trial court=s
judgment.  Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990).  We must
then affirm the judgment of the trial court on any legal theory that finds
support in the evidence.  In re W.E.R.,
669 S.W.2d 716, 717 (Tex. 1984).  We
review questions of law, including implied legal conclusions, de novo.  See State v. Heal, 917 S.W.2d 6, 9
(Tex. 1996).

IV.  Trial Court=s Duty
to File Findings of Fact and Conclusions of Law

In his first issue, Brad asserts
that the trial court erred by failing to file findings of fact and conclusions
of law with respect to the clarification order. 
Specifically, he argues that the trial court should have filed findings
of fact and conclusions of law because: (1) filing is required by statute, (2)
the trial court relied upon evidence presented at trial to make the findings
contained in the order, and (3) findings and conclusions would aid the parties
and this court.  We disagree.

 








A. 
Applicable Law        

Under rule 296, upon proper
request, the trial court has a mandatory duty to file findings of fact and
conclusions of law.  Tex. R. Civ. P. 296;
Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996); Cherne Indus., Inc.
v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989).  The purpose of rule 296 is to give a party a
right to findings and conclusions finally adjudicated after a conventional
trial on the merits before the court.  IKB
Indus., Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997).  However, findings and conclusions are not
required in every case.  See id. (explaining
that findings and conclusions are often unnecessary and requiring them in every
case would unduly burden the trial courts). 
In fact, we previously held that a trial court=s duty
to file findings of fact and conclusions of law does not extend to
post-judgment hearings.  Johnson v.
J.W. Constr. Co., 717 S.W.2d 464, 468 (Tex. App.CFort
Worth 1986, no writ) (reasoning that 
because a post-judgment hearing is not a trial, and because rule 296
specifically states that findings of fact and conclusions of law are mandatory
in Aany case
tried in the district or county court without a jury,@ rule
296 is inapplicable to post-judgment hearings). 

B. 
Analysis








Here, Karen filed a petition for
enforcement and a motion to clarify. 
After holding two hearings on the matter, the trial court found that the
original decree was not specific enough to be enforceable by contempt and
entered a clarifying order.  See
Gainous v. Gainous, 219 S.W.3d 97, 108 (Tex. App.CHouston
[1st Dist.] 2006, pet. denied) (holding that under section 9.008 of the Texas
Family Code, a court that renders a divorce decree retains limited,
post-judgment jurisdiction). 
Consequently, because the hearings in this case were post-judgment
hearings, and because a trial court=s duty
to make findings of fact and conclusions of law does not extend to
post-judgment hearings, we hold that the trial court did not abuse its
discretion by denying Brad=s
request for findings of fact and conclusions of law.  See Johnson, 717 S.W.2d at 468.  Accordingly, we overrule Brad=s first
issue. 

V.  Trial Court=s
Authority to Clarify the Divorce Decree

In his second issue, Brad
contends that the trial court lacked authority to enter the clarification order
because the decree was not ambiguous. In the alternative, Brad argues that the
trial court erred by entering the clarifying order and by awarding Brad=s
post-divorce income to Karen.  We agree
in part.

A. 
Applicable Law








Generally, a court that renders
a divorce decree retains continuing subject-matter jurisdiction to clarify and
to enforce the decree=s property division.  Tex. Fam. Code Ann. '' 9.002,
9.008 (Vernon 2006).  Specifically, the
court has continuing jurisdiction to Arender
further orders to enforce the division of property made in the decree of
divorce . . . and to assist in the implementation of or to clarify the prior
order.@  Id. '
9.006(a).  

However, there are limitations
on the enforcement and clarification powers of the trial court that rendered
the divorce decree.  For example, a trial
court may not Aamend, modify, alter, or change
the division of property made or approved in the decree of divorce or
annulment.@ 
Tex. Fam. Code Ann. '
9.007(a).  Thus, clarification orders
cannot be used to make a substantive change in a divorce decree after it
becomes final even if it contains substantive legal error.  See Shanks v. Treadway, 110
S.W.3d 444, 449 (Tex. 2003) (declaring that party=s Aremedy
for a substantive error of law by the trial court was by direct appeal, and he
cannot now collaterally attack the judgment@).  More simply put, res judicata applies to the
property division in a final divorce decree, just as it does to any other final
judgment, barring subsequent collateral attack even if the divorce decree
improperly divided the property.  Baxter
v. Ruddle, 794 S.W.2d 761, 762 (Tex. 1990); 
Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987). 








A subsequent order may, however,
clarify a decree to correct an ambiguity so that the parties to that decree are
able to comply with its terms.  See
Tex. Fam. Code Ann. '' 9.008(b) (declaring that the
court may enter a Aclarifying order@ to
enforce compliance with an insufficiently specific decree), 9.006(a), (b); Shanks,
110 S.W.3d at 447.  To determine whether
a subsequent order clarifies or modifies a decree, Awe must
interpret the decree to determine not what the trial court should have done
but, if possible, what the trial court actually did.@  Shanks, 110 S.W.3d at 447. 

Agreed judgments are interpreted
in accordance with contract law. McKnight v. Trogdon‑McKnight, 132
S.W.3d 126, 130 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).  We construe
divorce decrees, like judgments, as a whole to harmonize and give effect to the
entire decree.  Shanks, 110 S.W.3d
at 447.  If, when read as a whole, the
divorce decree=s terms are unambiguous, we must
effectuate the order in light of the actual language used.  Id. 
On the other hand, if the divorce decree=s terms
are ambiguous, that is, subject to more than one reasonable interpretation, we
must review the record along with the decree to aid in interpreting the
judgment.  Id.  Furthermore, if the decree is ambiguous, we
adopt the construction that correctly applies the law.  Id. 
Whether a divorce decree is ambiguous is a question of law subject to de
novo review.  Id.  

B.  Analysis

We must first determine whether
the divorce decree=s award of Karen=s share
of the residual income is reasonably susceptible to more than one meaning.  Shanks, 110 S.W.3d at 447. 








The decree awards Karen sixty
percent of Brad=s residual income based (1) Aon
business generated prior to August 4, 2003@ and (2)
Aupon the
book of business as of August 4, 2003.@  Brad, argues that the decree is unambiguous
because Abusiness
generated@ and Abook of
business@ can
only mean Apayments made.@ 

However, contrary to Brad=s
assertion, the trial court did not limit the award in the divorce decree to Acommissions
on payments made prior to August 4, 2003,@ but
instead, used broader terms such as Abusiness
generated@ and Abook of
business.@ 
Therefore, based on the decree=s
failure to ascribe meanings to the terms Abusiness
generated@ and Abook of
business@
regarding residual income, we find that the decree is subject to more than one
reasonable interpretation and thus, is ambiguous.  Accordingly, we hold that the trial court
correctly exercised its authority to enter a clarifying order.  See Guerrero v. Guerra, 165 S.W.3d
778, 784 (Tex. App.CSan Antonio 2005, no pet.)
(holding that the trial court properly entered a clarifying order where
provision of property settlement in divorce decree failed to define Aafter-acquired
property,@ making provision susceptible to
two meanings and thus, ambiguous). 








Having determined that the
decree=s
valuation of Karen=s share of the residual income
is ambiguous, we must next consider whether the trial court=s
interpretation of the provision is supported by the record and in compliance
with the law.  Shanks, 110 S.W.3d
at 447. 

During the clarification
hearings, the trial court focused on two particular phrases in the original
divorce decree that, depending on the parties=
interpretations, would result in an increase or decrease in the amount of money
Karen received monthly.  The phrases at
issue were: Aresidual income based on
business generated prior to August 4, 2003A and A[r]esidual
[i]ncome based upon the book of business as of August 4, 2003.@

At the hearings, Brad argued
that the trial court intended for the decree to provide that Karen is to
receive sixty percent of the Abusiness
generated@ by the downline as of the date
of divorce.  More simply put, not only
was a snapshot taken of the downline but also of the income generated by that
downline; therefore, neither the downline nor the income will ever increase.
Consequently, the amount Karen receives on a monthly basis, as a percentage of
the residual income, also will never increase. 
Brad supported his argument by pointing out that any income outside the
snapshot is a mere expectancy and therefore would be his separate property.








Karen, on the other hand, argued
that the trial court intended for her to receive future income generated from
the Abook of
business@ as of
August 4, 2003.  In other words, the
phrase Abook of
business@
referred to the downline that existed as of August 4, 2003 and not to the
actual income generated by that downline; therefore, although the number of
members and brokers in the downline will never increase, the income generated
by that existing downline can and, as a result, the amount Karen receives as
her share of the residual income will also increase.

Karen supported her argument by
pointing out that at the close of trial in 2003, the trial court noted the lack
of legal authority presented on the issue, but went on to state that it would
take into consideration Alsenz, a case presented by Karen=s
counsel during trial.  Alsenz v.
Alsenz, 101 S.W.3d 648 (Tex. App.CHouston
[1st Dist.] 2003, pet. denied).[3]  Karen asserted that the trial court relied on
this case in rendering its ruling awarding her sixty percent of the residual
income.








After hearing arguments from
both sides, the trial court agreed with Karen=s
interpretation and entered an order to clarify the ambiguity.  As previously mentioned, the clarification
order (1) defined Abook of business@ and Aresidual
income,@ (2)
divided Brad=s sources of commissions into
three categories, and (3) awarded Karen sixty percent of the residual income
earned within the Group A category, including any growth in the income
resulting from brokers and members being added after the divorce.

On appeal, Brad argues that the
trial court erred in adopting Karen=s
interpretation of the decree because it does not comply with the law in that it
awards Karen a portion of his future earnings which are not community
property.  Karen however,  responds that there was sufficient evidence
from which the trial court could rule that the Aresidual
income,@
including any growth, was community property.








To support his argument, Brad
directs our attention to two cases Cunningham and Loaiza.  Loaiza v. Loaiza, 130 S.W.3d 894 (Tex.
App.CFort
Worth 2004, no pet.); Cunningham v. Cunningham, 183 S.W.2d 985 (Tex.
App.CDallas
1944, no writ).  In Cunningham,
the appellate court held that the wife was not entitled to the husband=s future
commissions on insurance policies because the right to receive commissions was
contingent on the customers renewing their policies and the husband=s
continued employment by the agency.  Cunningham,
183 S.W.2d at 985.  Brad argues that the
facts in Cunningham are analogous to the facts in this case because any
future commissions he earns are contingent upon the members and brokers within
his downline paying their monthly dues and on him remaining an active broker
for Ameriplan.

In Loaiza, a major league pitcher
signed a lucrative contract during his marriage that required him to perform
services after the marriage ended.  Loaiza,
130 S.W.3d at 906B07. 
This court held that despite the fact that the contract was signed
during marriage, the income was not earned until the services were performed
post-divorce.  Id. at 909B10.  Brad claims that Loaiza
is also analogous to this case because he works on contract with Ameriplan and
is required to sell at least one membership per month to maintain his right to
commissions.








In response to Brad=s
argument, Karen distinguishes the facts in this case from those in Cunningham
and directs our attention to cases involving stock options and employment
benefits.  Karen emphasizes that Texas
courts have regularly held that stock options earned but not exercisable during
the course of the marriage are community property, even if contingent upon
future employment.  See Boyd v. Boyd,
67 S.W.3d 398, 410 (Tex. App.CFort
Worth 2002, no pet.) (recognizing that the ability to sell the options was limited);
Charriere v. Charriere, 7 S.W.3d 217, 220 (Tex. App.CDallas
1999, no pet.) (holding that the community nature was not affected by the fact
that termination of the relationship with the employer would end the right to
exercise the option); Kline v. Kline, 17 S.W.3d 445, 446 (Tex. App.CHouston
[1st Dist.] 2000, pet. denied) (holding that the stock options were community
property even if not vested).  Furthermore, under
established Texas law, unaccrued and unmatured retirement benefits, earned
wholly or partially during marriage, are community property subject to
division.  See Shanks, 110 S.W.3d
at 446; Busby v. Busby, 457 S.W.2d 551, 553 (Tex. 1970); Boyd, 67
S.W.3d at 407.  Karen argues that the income
stream at issue here is not a mere expectancy but involves significant rights[4]
that existed and could be exercised during the course of the marriage, thereby
creating a community interest analogous to stock options or employment
benefits.     

Interpreting the decree as Karen
suggests, however, is contrary to Texas law. 
It is well settled that a person=s
earnings after divorce are separate property and therefore not subject to
division.  See Von Hohn v. Von Hohn,
260 S.W.3d 631, 641 (Tex. App.CTyler
2008, no pet.); Loazia, 130 S.W.3d at 908; Smith v. Smith, 836 S.W.2d
688, 692 (Tex. App.CHouston [1st Dist.] 1992, no writ).  Karen asks us to interpret the
decree in a way that would grant her a percentage of Brad=s future
income.  We cannot.








Although we agree with Karen=s
statement that the income stream earned during marriage is not a mere
expectancy and, therefore, is community property subject to division, we
disagree with her conclusion that the same can be said of the income stream=s growth
after divorce.  See Smith, 836
S.W.2d at 692 (holding that a spouse is only entitled to a division of property
that the community owns at the time of divorce).  Whereas, the monthly income received from the
downline in existence at the time of divorce is already earned, the income
resulting from new members and brokers being added after divorce is not.  See Eliz v. Eliz, No. 05‑01‑00085‑CV,
2002 WL 1895090, at 3 (Tex. App.CDallas
Aug. 19, 2002, no pet.) (not designated for publication) (holding that evidence
of husband=s estimated income after divorce
could not be used to determine value of community property).  








To clarify, the members and
brokers in the downline choose whether or not to pay their monthly dues,
renewal is unnecessary.  Once recruited,
the income is earned and no further effort on Brad=s part is
necessary.  The fact that Brad is
required to recruit one new member or broker each month in order to receive
the income does not change the fact that the income has already been earned.  Therefore, we hold that the
trial court did not abuse its discretion in issuing an order clarifying that
the decree awards Karen sixty percent of the income stream that results from
members and brokers in the downline as of the date of divorce.

On the other hand, the addition of
new members and brokers is contingent on Brad, or someone within his downline,
successfully selling the product, whether that be a membership with Ameriplan
or future employment as an independent broker of Ameriplan.  Therefore, new members and brokers have yet
to be earned.  See Loazia, 130
S.W.3d at 906B07 (holding husband=s post-divorce
income was his separate property even though the contract contained a Aguarantee clause@ because husband=s right to payment
under contract did not accrue until he performed his services).  








Because the addition of new members and
brokers is not a guarantee, the growth in income resulting from new members and
brokers is merely an expectancy.  See
Von Hohn, 260 S.W.3d at 642 (holding that because no money had been
received by husband=s law firm from pending but unsettled
cases, revenue from those cases was no more than an expectancy interest, and
any money to be received constituted future earnings to which wife was not
entitled).  Furthermore, although Brad has
significant rights as to the income stream earned during marriage, he does not
and cannot have any rights in something he has yet to acquire. Therefore, any
growth in income resulting from new members and brokers being added after the
divorce is Brad=s separate property.         

In summary, the trial court=s order awarding
Karen a percentage of the income stream=s future growth is
contrary to the law.  We hold, therefore,
that the trial court abused its discretion in rendering the order and,
accordingly, sustain Brad=s second issue in part.  We modify the order to delete the language
awarding Karen Asixty percent of the commissions
earned from the income and commissions that may be payable to, or received by,
the brokers within the Group A category from any source whatsoever, from and
after the date of August 4, 2003.@  In its place, we insert the language: Asixty
percent of the commissions earned as a result of the income and commissions
that may be payable to, or received by, the brokers within the Group A category
from brokers within the Group A category. 
Karen is not entitled to any income generated by the Group A category
that is the result of brokers and members added after August 4, 2003.@ 

 

 

 

 

 








VI.  Conclusion

Having overruled Brad=s first
issue and sustained his second issue in part, 
we affirm the trial court=s
clarification order as modified.

 

 

BOB MCCOY

JUSTICE

 

PANEL:
LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DELIVERED:
December 18, 2008











[1]Unfortunately, the
exhibits used during trial, detailing exactly how an independent broker with
Ameriplan earns commissions, were destroyed 
by the county records management division.  It is our understanding, based on the record
and the briefs, that an independent broker=s commission consists of a percentage of the
income generated by the brokers he recruits in addition to a percentage of the
income that the brokers in his downline receive from the various levels of
their downlines.





[2]Brad and Karen agreed
before trial to a 60/40 split of the marital assets and liabilities, with sixty
percent going to Karen and forty percent to Brad.





[3]In Alsenz, the
issue was whether royalties during the marriage on a patent owned by the
husband prior to the marriage were community or separate property.  Id.  The Alsenz court stated that Athe income stream
generated during the marriage from [the husband=s] inventions patented
before the marriage was a >revenue= and a >fruit= of his separate property; therefore, we hold
that it was community property.@  Id.






[4]These rights include: (1)
the right to sell, (2) the right to give it to another, (3) the right to
transfer by will, (3) the right to use as collateral, and (4) the right to
income after qualified retirement.