TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00736-CV






William Henry Jackson, Appellant


v.


Patricia Jackson, Appellee






FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY

NO. 09-1932-FC1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING



 

 M E M O R A N D U M O P I N I O N


 William Henry Jackson appeals a final divorce decree that awarded his former
spouse, Patricia Jackson, the entirety of the community interest in her teacher retirement account.
Contending that the trial court abused its discretion in making this award, William (1) appeals. We will
affirm the judgment.


BACKGROUND

 After thirty-three years of marriage, William filed a petition for divorce from Patricia
in June 2009. Patricia counter-petitioned. There were no minor children of the marriage at the time,
and the parties subsequently managed to agree to a division of most of the marital estate. It was
agreed that William would keep his business--he was a self-employed contractor who taught
automotive classes at Raytheon but also earned income from maintaining the Williamson County
show barn and running a lawn and landscaping business. The parties further agreed that Patricia
would keep the car that she used and that William would keep two vehicles he used for his business
as well as two recreational vehicles (one of which he had been using as his residence since moving
out of the marital home in August 2009). Patricia was to receive the marital home. The evidence
reflected that this disposition of the home was consistent with a previous agreement whereby Patricia
became the sole owner of the home in exchange for refinancing the mortgage in May of 2009 to
obtain cash to pay tax debts that William had incurred by failing to withhold taxes from his business
income. As a result of the refinancing, William had received $90,094.89, $40,000 of which he used
to pay the tax debt, $23,272 of which he paid to Patricia as her share of the net, and the remainder
of which he had retained.

 For about fifteen years leading up to the divorce proceeding, the parties had
maintained largely separate finances--they had separate bank accounts and credit cards and they had
each paid different bills to cover their family's living expenses, with Patricia covering the mortgage
on their house, health insurance and life insurance premiums, groceries, and a car she used, while
William paid for utilities and cable, performed repair work around the house, and also funded three
or four family vacations and an unspecified number of other family outings. As part of their agreed
property division, William and Patricia agreed that each would keep the accounts and debts opened
and incurred by that party. This included credit-card debt totaling nearly $80,000 that William had
incurred on his personal and business credit cards. Patricia testified that she had been unaware of
this credit-card debt until after William had filed for divorce. She testified that she had "rarely" used
credit cards after the parties split their finances and that she had paid off her credit-card balances
as they came due.

 William and Patricia did not reach agreement, however, with respect to community
interests in time shares they had purchased--neither had a preference regarding how to dispose of
such property, which William testified he had usually "traded out" in order "to get other properties"
for family vacations and for business trips--and Patricia's retirement account. Patricia had worked
as a school teacher for roughly 29 years and contributed to the Texas Teacher Retirement System.
In 2006, she had taken retirement and begun drawing a monthly annuity in a net amount of
approximately $2,500 that would continue through her life. At that time, Patricia had begun working
in a part-time job with the Round Rock Independent School District assisting special-needs
students and earning around $33,000 annually. However, she testified that this part-time job was
to be terminated at the end of 2010 because the school district was going to replace it with a full-time position that she would be unable to pursue because of her retirement status. Thereafter, she
explained, her chief employment option was substitute teaching for approximately $1,000 per month.
Patricia further explained that, as a teacher, she had been required to contribute "the maximum
amount" to her teacher retirement account, that she had no other retirement fund, and that
she was ineligible to collect social security due to the nature of her past employment. It was
undisputed that the retirement account was community property, and William insisted that he
should receive half of it.

 Two evidentiary hearings were held. Patricia presented evidence concerning her
earning prospects compared to William's. The evidence reflected that William's annual earnings
in each of 2007 and 2008 were between roughly $92,000 and $95,000 from Raytheon and between
$9,500 to $14,300 from Williamson County, and that he had received still more income from
his lawn-mowing business. Patricia also presented evidence concerning the monthly social security
benefits to which William would be entitled if he retired at age 62 ($1,282), 67 ($1,791), or 70
($2,430). At time of trial, Patricia testified, William was 57 years of age. William claimed that he
did not currently have any plans to retire, would work as long as he could, and "could not afford a
retirement program" other than social security.

 The trial court rendered a final divorce decree dividing the property in
accordance with the parties' agreement, awarding the time shares to William, awarding the entirety
of Patricia's teacher retirement account to her, and purporting to award William "his social security
benefits." On William's request, the trial court entered findings of fact and conclusions of law. The
findings reflected that the community estate included Patricia's teacher retirement pension of
"2517.31/ net monthly" and "Petitioner's Social Security" in the amounts previously stated. The
findings further reflected that, in dividing the community estate, the court considered the parties'
agreed property division, "[t]he disparity of income in favor of [William]," "[t]he tax implications
of the mismanagement of the parties' community estate by [William]," "[w]asting and improperly
depleting community assets by [William]," William's "significant credit card debt incurred . . .
without the knowledge or consent of [Patricia]," the parties' respective earning capacities, and "[t]he
similar amount of retirement available to each party."

 William filed a "motion for rehearing," which was overruled by operation of law.
This appeal ensued.

ANALYSIS

 In three issues, William asserts that the trial court abused its discretion in
awarding the entire community interest in Patricia's retirement account to her because (1) it failed
to determine the total value of the retirement account at the time of the dissolution of marriage,
which, in his view, rendered the evidence supporting the property division factually insufficient;
(2) it considered William's future social security benefits in dividing the community estate; and (3) it
disproportionately divided the community estate in a manner that is manifestly unjust to William.

 We review the district court's property division under an abuse-of-discretion standard.
See Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion if it acts
arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence.
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). To determine whether there has been an abuse
of discretion because the evidence is legally or factually insufficient to support the district court's
decision, we engage in a two-pronged inquiry, determining whether (1) the district court had
sufficient evidence upon which to exercise its discretion, and (2) the district court erred in its
application of that discretion. Zeifman v. Michels, 212 S.W.3d 582, 587 (Tex. App.--Austin 2006,
pet. denied). To determine whether the evidence is factually sufficient, we weigh and consider all
the evidence in the record. Id. at 589-90. When an appellant attacks the factual sufficiency of an
adverse finding on an issue on which he did not have the burden of proof, the appellant
must demonstrate that the finding is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)
(per curiam). When an appellant attacks the factual sufficiency of an adverse finding on an issue for
which he had the burden of proof, the appellant must demonstrate that the "adverse finding is against
the great weight and preponderance of the evidence." Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001) (per curiam). We must not merely substitute our judgment for that of the trier of
fact. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).

 A trial court in a divorce proceeding "shall order a division of the estate of the
parties in a manner that the court deems just and right, having due regard for the rights of each
party." Tex. Fam. Code Ann. § 7.001 (West 2006). Only community property is subject to division;
the district court cannot divest a spouse of separate property. Jacobs v. Jacobs, 687 S.W.2d 731, 733
(Tex. 1985). In dividing the community estate, the district court may properly consider many factors,
including the spouses' capacities and abilities, business opportunities, education, relative financial
condition and obligations, size of separate estates, and the nature of the property. Murff, 615 S.W.2d
at 699. And, "the consideration of a disparity in earning capacities or of incomes is proper and need
not be limited by 'necessitous' circumstances." Id. "[I]t is presumed that the trial court exercised
its discretion properly." Id. at 699 (citing Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974)).

 Section 6.711 of the family code requires that when a party in a suit for dissolution
of marriage requests findings of fact and conclusions of law, the trial court state in writing
its findings concerning "(1) the characterization of each party's assets, liabilities, claims, and
offsets on which disputed evidence has been presented; and (2) the value or amount of the
community estate's assets, liabilities, claims, and offsets on which disputed evidence has been
presented." Tex. Fam. Code Ann. § 6.711 (West 2006). William's contentions regarding his first
issue--complaining of the trial court's asserted failure to find the value of Patricia's teacher
retirement account--center on the fact that the trial court found, in regard to the value of Patricia's
account, only the net amount of each monthly annuity payment but not a lump-sum total net present
value of the account as of the time of divorce. William contends that without specific findings as
to "the actual market value of the retirement account," the court lacked factually sufficient evidence
to divide the marital property in a just and right manner.

 We first question whether William has preserved this complaint, given that both
parties at trial presented evidence and argument regarding Patricia's retirement solely with reference
to her monthly annuity amount. In any event, we cannot conclude that the trial court abused its
discretion in this regard. The evidence relevant to the value of Patricia's teacher retirement account
was undisputed. Counsel for both parties questioned Patricia about the amount of the monthly
payments she received, and her testimony was consistent with a "Verification of Monthly Payments"
that she entered into evidence without objection. It showed that she would receive monthly
payments from the teacher retirement account in the amount of $3,059.29 gross--$2,517.31 net--for
the rest of her life. Neither party introduced or sought to introduce any other evidence regarding the
teacher retirement account. William neither pleaded nor introduced evidence regarding a lump-sum
value of the teacher retirement account, or otherwise complained of its valuation in terms of monthly
payments instead of a total lump sum. Because there was no evidence disputing the value of the
teacher retirement account, the trial court was not obligated to state its finding as to the value of the
account, see Tex. Fam. Code Ann. § 6.711, nor was it obligated to describe the value of the account
as a present lump-sum rather than the per-month values adduced at trial. See Burney v. Burney,
225 S.W.3d 208, 215 (Tex. App.--El Paso 2006, no pet.) ("It is the responsibility of the parties
to provide the trial judge with a basis upon which to make the division."); Deltuva v. Deltuva,
113 S.W.3d 882, 887 (Tex. App.--Dallas 2003, no pet.) ("When a party does not provide values for
property to be divided, that party may not complain on appeal that the trial court lacked sufficient
information to properly divide the property."). (2) We overrule William's first issue.

 In his second issue, William complains that the trial court abused its discretion
by considering his future social security in dividing the community estate. He first asserts that
the trial court "improperly awarded Appellant William Jackson his social security, in violation
of the prohibition against dividing social security as marital property." William observes that the
Social Security Act, 42 U.S.C.A. § 407 (West 2011), contains an anti-assignment provision that has
been construed as preventing social security benefits from being "subject to division under
community property laws due to federal preemption." Richard v. Richard, 659 S.W.2d 746, 749
(Tex. App.--Tyler 1983, no writ). As a formal matter, we agree that William's social security
benefits were not community property subject to division. However, as William acknowledges,
"errors in the valuation of property do not require reversal unless, because of such errors, the
division made by the trial court is manifestly unjust." Von Hohn v. Von Hohn, 260 S.W.3d
631, 641 (Tex. App.--Tyler 2008, no pet.) (citing Cook v. Cook, 679 S.W.2d 581, 585
(Tex. App.--San Antonio 1984, no writ)); see Prague v. Prague, 190 S.W.3d 31, 38
(Tex. App.--Dallas 2005, pet. denied) (if characterization error is established, trial court must
determine whether the error caused the trial court to abuse its discretion). In the end, the trial court
reached the correct result by "awarding" William the entirety of the social security benefits that were
his in the first place.

 William also suggests that the trial court's "award" or consideration of his
social security benefits in the community-property division in itself skewed its analysis of whether
to award the community interest in Patricia's retirement account entirely to her. Although Richard
holds that social security benefits may not be divided, per se, 659 S.W.2d at 749, courts may
consider a spouse's future social security benefits among the many factors bearing upon a just
and right division of the community estate. See Prague, 190 S.W.3d at 35 (affirming trial court
judgment that disproportionately divided the community estate in part because the "value of
appellant's social security benefits is much greater than the value of appellee's social security
benefits"); Phillips v. Phillips, 75 S.W.3d 564, 573 (Tex. App.--Beaumont 2002, no pet.)
(considering value of social security and earning potential compared to value of teacher
retirement account).

 William must explain how the trial court's consideration of his future social security
benefits resulted in a manifestly unjust division. See Von Hohn, 260 S.W.3d at 641. As previously
noted, "the similar amounts of retirement available" to the parties was only one of several factors
on which the trial court relied when dividing the community estate. The court also considered "[t]he
disparity of income in favor of [William]" in light of evidence that Patricia would earn roughly
$1,000 per month as a substitute teacher ($12,000 annually) and that she had limited marketability
with respect to other jobs. Meanwhile, there was evidence that William was earning upwards of
$100,000 annually and, at age 57, could continue working and earning for several more years at
that rate. The trial court also made findings to the effect that William had mismanaged and wasted
community assets and incurred tax liabilities that were community debts. All of these findings are
unchallenged on appeal. In this context, we cannot conclude that the trial court's decision was
outside the bounds of its discretion in making a "just and right" property division. We overrule
William's second issue.

 For the same reasons, we also overrule William's third issue, a general complaint that
the trial court abused its discretion in awarding Patricia the entirety of her teacher retirement account. 


CONCLUSION

 Having overruled each of William's issues, we affirm the trial court's judgment.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 3, 2011
1. Because the parties shared a common surname during the proceedings below, we will
identify them by their first names for clarity. 
2. The sole cite that William provides in support of the contention that the trial court
was required to calculate a "market value" or "net present value" of the teacher retirement account
is Justice Stewart's concurring and dissenting opinion in Finn v. Finn, 658 S.W.2d 735, 749
(Tex. App.--Dallas 1983, writ ref'd n.r.e.). Justice Stewart's opinion does state that "[a]ll assets
of the community estate are valued as of the time of dissolution of the marriage." However, this
portion of Finn involved valuing the husband's present interest in the law firm in which he was
a partner. The wife "hotly contested" the value of the husband's interest in the law firm, and argued
that the trial court erred by instructing the jury to disregard goodwill and future earning capacity from
the valuation of the community interest in the husband's law practice. Id. at 739-40. Justice Stewart
disagreed with the majority's holding that goodwill could not be properly considered in determining
the value of the community's interest in the law firm. Id. at 749. The case does not appear to speak
to the duty of a trial court to make further calculations of value and include them in written findings
when it is presented with unchallenged evidence of a monthly payment.