**Thomas Graham PRAGUE, Appellant,**

v.

**Sherrie Anne PRAGUE, Appellee.**

No. 05–04–00903–CV.

Court of Appeals of Texas, Dallas.

July 15, 2005.

Diane L. Snyder, Snyder & Snyder, Dallas, for Appellant.

Michael J. Collins, Kyle G. Basinger, and Teresa G. Sanchez, Dallas, for Appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION ON MOTION
## FOR REHEARING

Opinion by Justice WRIGHT.

Before the Court is appellant's motion for rehearing. We deny appellant's motion for rehearing. On the Court's own motion, we withdraw our opinion dated April 27, 2005 and vacate our judgment of that date. This is now the opinion of the Court.

Appellant Thomas Graham Prague appeals a property division incident to a divorce. In nine issues, appellant complains about the trial court's failure to make amended findings of fact; the trial court's finding that a portion of the Teachers Retirement System (TRS) Lump Sum payment and a portion of the TRS Annuity payment is appellee Sherrie Prague's separate property; and the trial court's division of the property. For the reasons stated below, we affirm the trial court's judgment.

### BACKGROUND

Appellant and appellee were married in September 1976. There were no children born of the marriage, but both had chil-

dren from previous marriages. Prior to the marriage, appellee worked as a teacher in the Irving Independent School District (IISD) for nine years, and participated in TRS. At the time of her marriage to appellant, appellee had already withdrawn seven years of creditable service from TRS. A few months after marriage, appellee withdrew the final two years of the nine years of creditable service from TRS earned before the marriage. In 1980, appellant filed for divorce. During the couple's separation, appellee reinstated the prior nine years of creditable service by paying TRS approximately $5000. Appellant and appellee reconciled and continued their marriage. In May, 2002, appellee retired after having worked thirty-three years in the IISD. Appellant was already retired and receiving social security benefits.

In August 2002, appellee filed for divorce and appellant filed a counter-petition for divorce. After a two-day bench trial in January 2004, the trial court granted the divorce on the grounds of insupportability. The final divorce decree was issued on April 7, 2004. It divided the community marital estate, listed appellant's and appellee's separate property, and ordered both to pay their own attorney's fees and costs. Appellant timely requested findings of fact and conclusions of law. The trial court issued its findings of fact and conclusions of law. Those findings listed the property that made up the marital estate; property appellant owned before the marriage; and property appellee owned before the marriage, namely a portion of the TRS Lump Sum valued at $55,515 and a portion of the TRS Annuity valued at $88,577.35. The trial court also found that at the time of her retirement, appellee had worked for thirty-three years, nine years prior to the marriage and twenty-four years after marriage.

The trial court denied appellant's request for additional findings of fact and conclusions of law, and this appeal followed.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

In his first issue, appellant contends the trial court made erroneous findings of fact and conclusions of law. Any party may request the court to state in writing its findings of fact and conclusions of law in cases tried in the district or county court without a jury. TEX.R. CIV. P. 296. Any party may also request additional or amended findings of fact and conclusions of law if he believes the court's findings and conclusions are deficient in some respect. *Id.* 298. The court must make findings and conclusions on ultimate or controlling issues, but need not do so on evidentiary issues. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 6 (Tex.App.-Waco 2002, no pet.). An ultimate fact issue is one that is essential to the right of the action, while an evidentiary issue is one that the jury may consider in deciding the controlling issue, but that is not a controlling issue itself. *Id.* In matters of property division, the ultimate and controlling issue is whether the trial court divided the property in a just and right manner. *Id.* at 7; *see also* TEX. FAM.CODE ANN. § 7.001 (Vernon 1998).

We review the trial court's fact findings under the same standards that are applied in reviewing evidence supporting a jury's answers; that is, to determine if the findings are supported by legally and factually sufficient evidence. *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 386 (Tex.App.-Dallas 2000 pet denied). In reviewing a legal sufficiency issue, we consider only the evidence and inferences that support the challenged finding. *Id.* We will uphold the trial court's finding if there is more than a scintilla of evidence to

support it. *Id.* In reviewing a factual sufficiency issue, we consider all of the evidence, and will set aside a finding if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.*

Appellant argues the following: fact # 5 (that a portion of the TRS Lump Sum and the TRS Annuity was owned by appellee before the marriage), # 7 (that the value of the Vandiver Trust was unknown), # 12 (that their children from previous marriages were supported and helped .by the parties throughout their adulthood), # 18 (that benefits available at the time of retirement for TRS were not totally generated during the marriage), and # 22 (that the only testimony admitted into evidence regarding the valuation of the retirement benefits was that of John Boyd) were not supported by the evidence. Appellant also argues that finding of fact # 20 (that money borrowed from TRS was paid back with appellee's separate property) is clearly erroneous because there was no evidence concerning the origin of the funds.

▇▇▇ In this case, there is sufficient evidence to support the trial court's findings. The record shows appellee had worked nine years before her marriage to appellant, which supports findings # 5 and # 18 that a portion of the TRS Lump Sum and TRS Annuity was owned by appellee as her separate property, and that the benefits available at the time of her retirement from TRS were not totally generated during the marriage. Likewise, the record shows the value of the Vandiver Trust was unknown at the time of trial, thus supporting finding # 7. Appellee testified her brother and sister were co-trustees of the trust, and that although she had stated her portion of the trust was valued at approximately $125,000 in a previous reporting, she did not know the value of the trust at

the time of trial because nothing had been distributed from the trust and they intended to keep all of the trust's assets in the trust. Both appellant and appellee testified they supported their children, including helping them through college, which is sufficient evidence to support finding # 12.

▇▇▇ Finding # 20 states that monies borrowed from TRS were paid for the reinstatement of TRS during a time when the parties were separated, and that the reinstatement payment came from appellee's separate property. A trial court's finding of separate property must be supported by clear and convincing evidence. TEX. FAM.CODE ANN. § 3.003(b) (Vernon 1998). "Clear and convincing" means the measure or degree of proof that will produce a firm belief or conviction in the mind of the trier of fact as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002). Appellee initially testified the $5000 reinstatement payment for nine years of creditable service was paid with money from her separate bank account, then later testified the payment was from money inherited or gifted to her from her father. In his deposition, appellant testified he never contested the fact that appellee used "some" inheritance money to buy back her nine years of creditable service and that the money used was appellee's separate property. During the trial, appellant initially testified that neither he nor appellee had $5000 in any account that could have been used to pay the reinstatement at the time the reinstatement payment was made, and that he did not know where appellee got the reinstatement payment money because they were separated at the time. Appellant later testified he believed the reinstatement payment came from community funds and he contested the fact that the money used for the reinstatement payment was appellee's separate property

based upon an inheritance or gift. When presented with conflicting evidence, the fact finder may believe one witness over another or resolve any inconsistencies in a witness' testimony because the fact finder is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Naguib v. Naguib,* 137 S.W.3d 367, 377 (Tex.App.-Dallas 2004, pet. denied).

■ It is undisputed that appellee's retirement benefits in TRS began nine years before the marriage. Assuming that appellee did not meet her burden of establishing that she used separate funds to reinstate the nine years of creditable service by clear and convincing evidence, the character of the property is fixed. Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, due to the time and manner of acquisition, is separate in character. *See Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975). Under circumstances where community funds might have been used to reinstate appellee's nine years of creditable service, a claim for reimbursement might arise. *See* TEX. FAM.CODE ANN. § 3.408 (Vernon Supp.2004–05). However, we note that appellant did not raise a reimbursement claim. Rather, appellant argues that the use of community funds changed the character of appellee's nine years of creditable service earned before the marriage from separate to community property. We conclude there is sufficient evidence to support the trial court's finding of fact # 20. This court has already determined that separate property retains its character, and that the ultimate and controlling issue is whether the trial court divided the property in a just and right manner. *Limbaugh,* 71 S.W.3d at 7.

■ The record also contains sufficient evidence to support finding # 22, that the only testimony admitted into evidence regarding the valuation of retirement benefits was the testimony of John Boyd with specifically delineated values for the separate property and community portions of TRS. Boyd, appellee's expert witness, testified his calculations were based upon the same valuation tables and discount rates used by TRS, and reflects nine years worked by appellee prior to the marriage as separate property. Philip Hogan, Thomas's expert witness, presented testimony on the valuation of the TRS Annuity that was based upon tables and rates from outside annuity companies, and his expert opinion that all of the retirement benefits were community property. Hogan also testified he did not disagree with Boyd's calculations on the retirement benefits, and agreed that nine years of creditable service were appellee's separate property. The trial court was free to accept Boyd's values for appellee's separate property portion of TRS and the community portion of TRS. *Id.* We resolve appellee's first issue against him.

■ In issue two, appellant contends the trial court erroneously refused to make amended and additional findings. Appellant asserts that he has been harmed by the trial court's refusal to make amended findings regarding the method used to determine property, and that all of his requested amended and additional findings of fact and conclusions of law were supported by evidence presented at trial. As previously noted, a trial court need only enter additional findings of fact and conclusions of law on ultimate or controlling issues. *Limbaugh,* 71 S.W.3d at 6. Appellant's request for additional and amended findings of fact and conclusions of law all

relate to evidentiary matters. Thus, the trial court was not required to issue amended and additional findings and conclusions. We resolve appellant's second issue against him.

### SHERRIE'S RETIREMENT BENEFITS

In issue five, appellant contends the trial court incorrectly determined that a portion of the TRS benefits was appellee's separate property. Appellant acknowledges that appellee worked nine years prior to the marriage. However, appellant argues that community assets were used to reinstate those nine years of creditable service because appellee had withdrawn all monies in TRS within several months after the marriage. Thus, appellant claims, the nine years of creditable service belong to the community estate. We have already concluded that there was sufficient evidence to support the trial court's finding that appellee used her separate property to reinstate those nine years of service.

When we are asked to review an alleged characterization error, we must determine not only whether the trial court's finding of separate property is supported by clear and convincing evidence, but also whether the characterization error, if established, caused the trial court to abuse its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 617 (Tex.App.-Fort Worth 2004, no pet.). Separate property is property owned or claimed by a spouse before marriage or acquired by a spouse by gift, devise, or descent during the marriage. TEX. FAM.CODE ANN. § 3.001 (Vernon 1998). Property possessed by either spouse on dissolution of the marriage is presumed to be community property. TEX. FAM.CODE

ANN. § 3.003(a) (Vernon 1998). To overcome this presumption, the spouse claiming certain property as separate property must clearly identify the property claimed to be separate. *Zagorski v. Zagorski*, 116 S.W.3d 309, 322 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

Whether property is separate or community is determined by its character at inception. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex.2001). Inception of title occurs when a party first has the right of claim to the property. *Alsenz v. Alsenz*, 101 S.W.3d 648, 652 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Appellee worked nine years before the marriage. Thus, those nine years of creditable service are appellee's separate property. Property that is characterized as separate property does not change although the property might be improved with community funds. *Langston v. Langston*, 82 S.W.3d 686, 688 (Tex.App.-Eastland 2002, no pet.). Appellee first had the right of claim to the nine years of creditable service prior to her marriage to appellant. Because this inception of title to these nine years of creditable service occurred prior to the marriage, we conclude the trial court did not abuse its discretion in determining that a portion of TRS was appellee's separate property. We resolve appellant's fifth issue against him.[1]

### VALUATION

In issue six, appellant contends the trial court incorrectly determined the value of appellee's portion of TRS. Appellant argues the trial court should have used the *Berry*[2] formula to determine the value of the community and separate prop-

---

1. Due to our conclusion in issue five that the retirement benefits were properly characterized, we will not address issue eight that contends the mischaracterization of the bene-

fits resulted in a disproportionate division of the property.

2. *Berry v. Berry,* 647 S.W.2d 945 (Tex.1983)

erty portions of the TRS Lump Sum and TRS Annuity rather than the *Taggart*[3] formula.

In *Taggart,* an ex-wife sued for a portion of her ex-husband's retirement benefits after he retired. The couple married in 1947 and divorced in 1968. Mr. Taggart retired from the Navy in 1974. The Texas Supreme Court held that an ex-wife owned, as her part of a community estate, a share in the contingent right to the ex-husband's military retirement benefits even though that right had not matured at the time of the divorce. *Taggart v. Taggart,* 552 S.W.2d 422, 423 (Tex.1977). The ex-husband had 360 months of active and retired naval service, and only 246 months were earned during the marriage. The court awarded the ex-wife one-half of 246/360 of the ex-husband's total retirement pay. *Id.* at 424.

In *Berry,* the Texas Supreme Court reaffirmed the *Taggart* formula for determining the extent of the community interest in retirement benefits. However, the court held that when the value of such benefits is in issue, the benefits are to be apportioned to the spouses based upon the value of the community's interest at the time of divorce, not at the time of retirement. *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983). In *Berry,* the husband retired *after* the divorce, and his retirement benefits increased as a result of pay raises and an improved benefit plan. The court determined that to allow the wife to share in these post-divorce increases would impermissibly invade the husband's separate property. *Id.* at 947.

In this case, TRS is a defined benefit plan. A defined benefit plan, such as the plans in *Berry* and *Taggart,* promise an employee a monthly benefit beginning at retirement. The benefit is based on number of years of service the employee has at the time of retirement, along with other factors such as age and salary history. Historically, defined benefit plans have been complicated to apportion upon divorce because their value at any given time is difficult to ascertain. *Smith v. Smith,* 22 S.W.3d 140, 148 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Thus, the Supreme Court developed a special formula to aid courts in making this calculation. *Id.* Since *Berry,* Texas courts have continued to apply the *Taggart* formula to determine the extent of the community's interest when the employee spouse's retirement is fully matured at the time of divorce. *See Limbaugh,* 71 S.W.3d at 6; *Stavinoha v. Stavinoha,* 126 S.W.3d 604, 616 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

Here, appellant and appellee were married in September 1976. Appellee retired in May 2002 after participating in TRS for thirty-three years, nine before the marriage and twenty-four during the marriage. Appellant and appellee were divorced in April 2004. Because appellee was already retired at the time of the divorce, the trial court correctly used the *Taggart* formula to determine the value of the community and separate property portions of the TRS Lump Sum and TRS Annuity. Hogan, appellant's expert witness, agreed that if the *Taggart* formula applies, the values obtained by appellee's expert witness are correct. We resolve appellant's sixth issue against him.

In issue seven, appellant contends the trial court incorrectly found that a portion of the earnings on the TRS Lump Sum was appellee's separate property without sufficient evidence to support that award. According to appellant, the TRS Lump Sum distribution was $154,712.88. At the time of the division, the amount from TRS

---

**3.** *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.    1977)

totaled $203,575, of which $55,515 was determined to be appellee's separate property. Appellant argues there was no evidence to show how the distribution grew from $154,712.88 to $203,575, and that all earnings on separate property during the marriage are community property.

■ We have already concluded the evidence is sufficient to support the trial court's finding that nine years of creditable service is appellee's separate property. The record shows the trial court used the nine years of creditable service to calculate appellee's separate property interest in the TRS Lump Sum distribution, which it determined to be $55,515. The remaining $148,060 of the TRS Lump Sum distribution was determined by the trial court to be community property, and was awarded to appellee in its entirety. The division of the community need not be equal, but it should be equitable. *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex.App.-Austin 2002, no pet.). The evidence is sufficient to support the trial court's award of the community property portion of the TRS lump sum distribution to appellee along with her separate property portion of the same. We resolve appellant's seventh issue against him.

■ In issue four, appellant contends the trial court improperly considered the tax consequences of only one asset of the marital estate. Appellant argues the trial court only considered the tax liabilities as to the TRS Annuity and not all of the assets in the community estate; the judge accepted appellee's expert's after-tax valuation; and the after-tax value was based upon incorrect data and speculation.

Boyd, appellee's expert witness, testified there was a $6000 non-taxable portion of the TRS Annuity and a $148,060 taxable portion. Boyd valued the TRS Annuity using TRS's rates after deducting taxes. Appellant cross-examined Boyd about the after-tax valuation of the TRS Annuity. However, appellant neither offered any evidence on the tax consequences of any other asset in the community estate nor did he object at trial to Boyd's testimony. We conclude appellant waived this complaint. We resolve appellant's fourth issue against him.

## PROPERTY DIVISION

■ A trial court has broad discretion in dividing the marital estate. We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Baw v. Baw*, 949 S.W.2d 764, 767 (Tex.App.-Dallas 1997, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex.App.-Dallas 2003, no pet.).

■ In issues three and nine, appellant argues the trial court abused its discretion by failing to divide the community estate in a just and right manner. Appellant contends the trial court mischaracterized property and inappropriately valued property, causing a grossly disproportionate division of the community estate. Appellant claims appellee received more of the community estate and that the court did not make a just and right division of the property.

■ Only community property is subject to the trial court's just and right division. TEX. FAM.CODE ANN. § 3.003(a). The trial court has broad discretion in dividing the marital estate, and we presume the trial court exercised its discretion properly. *Murff*, 615 S.W.2d at 698. The party who complains of the trial court's division of property must demonstrate from evidence in the record that the division was so unjust that the trial court

abused its discretion. *Loaiza v. Loaiza,* 130 S.W.3d 894 (Tex.App.-Fort Worth 2004, no pet.). The trial judge may order an unequal division of marital property when a reasonable basis exists for doing so. *Id.* It is this court's duty to consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Murff,* 615 S.W.2d at 698.

The record supports the trial court's disproportionate division of the community estate. The value of appellant's social security benefits is much greater than the value of appellee's social security benefits. For four years following the sale of his accounting firm, appellant continued to receive twenty-five percent of the firm's collections. Additionally, appellant receives compensation from his former firm for services rendered to the new owners. As we have concluded previously, the trial court properly characterized a portion of the TRS Lump Sum and TRS Annuity as appellee's separate property because appellee participated in TRS for nine years prior to the marriage. Likewise, the trial court's valuation of the community and separate property portions of appellee's retirement benefits is supported in the record. The fact that the trial court awarded appellee the community portion of the TRS Lump Sum and TRS Annuity does not render the division of the community estate so disproportionate as to be inequitable. We conclude the trial court did not abuse its discretion in awarding more than half of the community estate to appellee. We resolve appellant's third and ninth issues against him.

We affirm the trial court's judgment.