*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★   ★   ★                                          ★   ★   ★

## MEMORANDUM OPINION

No. 04-08-00338-CV

Anthony A. **PEREZ**,
Appellant

v.

Angelic **PEREZ**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-04209
Honorable Karen Pozza, Judge Presiding

Opinion by:      Steven C. Hilbig, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Rebecca Simmons, Justice
                  Steven C. Hilbig, Justice

Delivered and Filed:   April 22, 2009

AFFIRMED

      This is an appeal from a final decree of divorce.  In a single point of error, Anthony A. Perez

contends the trial court abused its discretion in awarding Angelic Perez a disproportionate share of

the marital estate and that there was insufficient evidence to support the award.  We affirm the trial

court's judgment.

## BACKGROUND

Angelic filed a petition for divorce on the grounds of insupportability and cruelty. *See* TEX. FAM. CODE ANN. §§ 6.001-.002 (Vernon 2006). Anthony answered and filed a counter-petition for divorce, alleging insupportability. *Id*. § 6.001. Angelic later amended her petition and requested a disproportionate share of the marital estate based on (1) fault, (2) conservatorship of the children, (3) children's needs, (4) indebtedness and liabilities, and (5) wasting of community assets. Anthony countered by amending his petition to add cruelty and adultery as grounds for divorce. After a final hearing, the trial court granted the divorce and rendered orders on conservatorship, child support and possession, and the division of the martial estate. The trial court signed the final decree of divorce, which awarded Angelic a disproportionate share of the martial estate. In its findings of fact and conclusions of law, the trial court found Anthony was "guilty of cruel treatment toward" Angelic, and concluded the divorce should be granted in favor of Angelic on the ground of cruelty.

## STANDARD OF REVIEW AND APPLICABLE LAW

The trial court has broad discretion to divide the martial estate in a manner the court deems "just and right." *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.–San Antonio 2007, no pet.); *see* TEX. FAM. CODE ANN. § 7.01 (Vernon 2006). Absent a clear abuse of discretion, which occurs when the complaining party demonstrates from the evidence that the division is so disproportionate that it is manifestly unjust and unfair, we will not disturb the trial court's apportionment. *Gardner*, 229 S.W.3d at 756; *Prague v. Prague*, 190 S.W.3d 31, 41 (Tex. App.–Dallas 2005, pet. denied). In exercising its discretion in dividing the estate, the trial court is not required to divide the marital estate equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981);

*Gardner*, 229 S.W.3d at 756; *Prague*, 190 S.W.3d at 41. In making its decision, the court may consider disparity of incomes or earning capacities, the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699. The court may also consider fault and the conduct of the errant spouse when fault grounds are pled, as well as the wasting of community assets. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 698 (citing *Young v. Young*, 609 S.W.2d 758, 761-62 (Tex. 1980)). Grounds for a fault-based divorce include cruelty, as pled by Angelic in this case and found by the trial court. *See* TEX. FAM. CODE ANN. § 6.002 (Vernon 2006). The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Young*, 609 S.W.2d at 761.

There is no abuse of discretion if the trial court's decision is based on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). We will consider "every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate." *McSweeney v. McSweeney*, No. 04-06-00461-CV, 2007 WL 247677, at *2 (Tex. App.–San Antonio Jan. 31, 2007, no pet.)(citing *Murff*, 615 S.W.2d at 699; *Prague*, 190 S.W.3d at 41).

In family law cases the abuse of discretion standard overlaps with the traditional sufficiency standards of review. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.–San Antonio 2006, no pet.). *Id*. Legal and factual sufficiency are therefore not independent grounds of error; rather, they constitute factors relevant to an assessment of whether the trial court abused its discretion. *Id.*

Accordingly, in considering whether the trial court clearly abused its discretion, we must review whether (1) the trial court had sufficient evidence upon which to exercise its discretion, and (2) the trial court erred in its application of its discretion. *Id*.

## DISCUSSION

Anthony contends the trial court erred in disproportionately dividing the marital estate in favor of Angelic because there was legally and factually insufficient evidence to support such a division. In its division of the marital estate, the trial court awarded Anthony (1) fifty percent of the net proceeds from the sale of real property in Spring Branch, Texas, valued at $4,860.00, (2) all cash, furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in his possession or subject to his sole control, value unknown, (3) all of his retirement monies, value unknown, (4) $10,000.00 from Angelic's retirement account, (5) a 2006 Chevrolet truck, value unknown, and (6) a cell phone, value unknown. Angelic received (1) the other half of the net proceeds from the sale of the Spring Branch property, (2) the cash, furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in her possession or subject to her sole control, value unknown, (3) her retirement account, valued at $27,140.33, less the $10,000.00 awarded to Anthony, (4) the marital home with equity valued at $20,186.89, and (5) a 2005 Pontiac Grand Prix, value unknown. The parties were ordered to pay any debts they incurred after August 2006, and Angelic was required to assume the debt on the marital home, $105,813.11, as well as the remaining debt of the 2005 Pontiac Grand Prix, the amount of which was not disclosed.

To evaluate the trial court's "just and fair" division, the analysis typically begins with the values of the various marital assets. *Redeaux v. Redeaux*, No. 09-06-084-CV, 2007 WL 274728, at *4 (Tex. App.–Beaumont Feb. 1, 2007, pet. denied) (mem. op.). Here, however, the record does not

include the value of Anthony's retirement benefits, the actual value of numerous items of personal property from the home sold by Anthony[1], the value of the parties' vehicles, or the value of certain equipment and tools used by Anthony in his former business operation. Nor is there any evidence in the record about the parties' indebtedness, though Angelic testified they both owed money on their individual credit cards. Absent these valuations, Anthony cannot demonstrate from the record that the trial court erred in its division of the marital estate. *See McSweeney*, 2007 WL 247677, at *2 (holding party who complains of trial court's division must demonstrate from evidence in record that division was so unjust as to be abuse of discretion); *Prague*, 190 S.W.3d 41 (same). Without such evidence we cannot say the division of the marital estate was disproportionate, much less an abuse of discretion. *See Redeaux*, 2007 WL 274728, at *4.

However, assuming the division was disproportionate and favored Angelic, we still cannot hold the trial court abused its discretion. Other than the police detective handling the protective order obtained by Angelic, only the parties testified. Angelic testified to physical abuse during the marriage, witnessed by her children, and stated she believed Anthony had an affair. She denied having an affair.

Angelic testified that after she left the marital home, Anthony failed to make the mortgage payments or the utility payments. He eventually had the utilities turned off. Once Angelic returned to the home under the court's temporary orders, she learned the mortgagor was about to foreclose on the home. She called the mortgagor and set up a payment plan, but was forced to take a second job to make up payments of approximately $7,000.00. She also had to pay $300-$400 dollars in past

---

[1] Anthony testified that after Angelic left the home, he sold almost everything therein to three or four people for $3,000.00. The items sold included: a dining room set, a sofa, love seats, a wing chair, a buffet, a big-screen television, a compact disc player and stereo, a china cabinet, all the china and crystal, dishes, lamps, a large urn, a refrigerator, and a washer and dryer set.

due utility bills and have the utility services resumed. When she arrived back home she found Anthony had taken most of the furniture and personal effects from the home. Angelic and her children were forced to sleep on air mattresses and use a portable dining table until friends and family members came to their aid. Angelic testified Anthony took the refrigerator and washer and dryer, but left her a message saying he would return them if she would talk to him on the telephone. During her testimony Angelic intimated that the alleged $3,000.00 Anthony received from the sale of the personal property in the home was far less than its actual value.

Angelic also testified that when she first returned to the home she found family pictures on a patio chair in a closet along with two burning candles, a Bible, and paperwork concerning the divorce – the Bible and paperwork had "a bunch of blood" on them.

Angelic obtained a protective order because of Anthony's actions. According to Angelic, Anthony harassed her while she was staying with an aunt. When she refused to speak with him on the telephone, "he grabbed a quart of beer and threw it at [her] windshield and broke it." Angelic testified Anthony would drive by her aunt's house up to ten times a day and eventually ran over the mailbox post. After she obtained the protective order and returned to the marital home, Anthony did not stop his behavior. According to Angelic, Anthony "tormented the kids at night, every night, . . . he'd start banging on the burglar bars" and rang the doorbell in the middle of the night on numerous occasions. She claimed Anthony damaged windows in the home. Angelic testified she called the police approximately fifteen times to report violations of the protective order. Anthony was ultimately arrested for violating the order, but after he was released on bond, he called and threatened Angelic, which prompted a second arrest and the implementation of GPS monitoring.

Angelic testified she earned $26,000.00 a year working as a crime victim liaison in the homicide unit of the San Antonio Police Department. She testified to the value of her retirement account with the city, the value of real property owned by the parties, and the value of and money owed on the marital home. Angelic was unable to provide testimony on the value of Anthony's retirement account or provide specific testimony on his salary over the years because he took all financial paperwork from the home. Angelic stated, however, Anthony operated a business refurbishing mobile homes from which she knows he has earned from $70,000.00 up to $350,000.00 a year. She also testified that Anthony has life insurance policies valued at $500,000.00 or more.

Anthony testified his business had been losing money and that after he was forced from the marital home under the temporary orders, the business folded. He claimed he was unable to work after he left the marital home until just a week before the final hearing. Anthony found work as a paver, laying asphalt for $12.00 an hour, but admitted to working some overtime. He provided no testimony about his previous earnings. He testified Angelic lied to him about her salary, telling him she only made $22,000.00 a year – he surmised she was hiding the rest of her salary so she could leave him.

Anthony admitted selling all of the personal property in the house, but claimed Angelic agreed he could sell whatever he needed to in order to pay the mortgage. He stated he gave half of the money from the sale to Angelic for house payments, but could not remember when he sold it or when he gave Angelic the money. He acknowledged cancelling the utilities to the home, but claimed he did it approximately a week before he received the temporary orders that ordered him not to shut them off.

Anthony testified the marital home was worth more than the appraised value testified to by Angelic. He stated he made upgrades to the home valued at between $15,000.00 and $20,000.00, including new flooring, paint, and a large storage shed in the backyard.

He admitted to having personal property, tools, and equipment in the storage shed, but provided no testimony of their value. He testified that equipment, used in his business, including a compressor and large generator, had an approximate value of $15,000.00. Anthony claimed, however, he no longer possessed this equipment because the trailer in which it was stored was stolen.

As the sole judge of witness credibility and having had the opportunity to observe the parties on the witness stand, the trial court was free to believe Angelic and her testimony regarding the property value, as well as her testimony about Anthony's actions during the marriage and during the divorce proceedings. *See Murff*, 615 S.W.2d at 700 (noting trial court in divorce case has opportunity to observe parties on stand and determine credibility); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (holding reviewing court cannot impose own opinions on credibility of witnesses and weight to be given their testimony contrary to those of fact finder). Considering the factors applicable in this case to an unequal division of property, including the disparity in their earning capacities, their abilities, the wasting by Anthony of community assets, and the cruelty of Anthony toward Angelic, we hold there is sufficient evidence to support an unequal division of the community estate.

### Conclusion

We hold Anthony has not established from the evidence in the record that the trial court abused its discretion. Accordingly, we overrule Anthony's issue and affirm the trial court's judgment.

Steven C. Hilbig, Justice