Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00709-CV

Ruben Gamez **HERNANDEZ**,
Appellant

v.

Claudia C. **HERNANDEZ**,
Appellee

From the County Court at Law No. 2, Webb County, Texas
Trial Court No. 2007-CVH-001769-C3
Honorable Jesus Garza, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:     Rebecca Simmons, Justice
        Steven C. Hilbig, Justice
        Marialyn Barnard, Justice

Delivered and Filed:   June 3, 2009

AFFIRMED

    This is an appeal from a final decree of divorce.  In a single point of error, Ruben Gamez

Hernandez contends the trial court abused its discretion in dividing the marital estate.  We affirm the

trial court's judgment.

## BACKGROUND

After almost twelve years of marriage, Ruben filed for divorce. Claudia answered and filed a counter-petition for divorce. Ruben subsequently filed a first amended petition for divorce. Each petition listed insupportability as grounds for divorce. A trial to the court was held on April 22, 2008. The only disputed issue was the division of the marital estate. Ruben and Claudia were the only witnesses who testified. The trial court rendered a final decree of divorce and signed findings of fact and conclusions of law at Ruben's request. Claiming an improper division of the marital estate, Ruben filed a notice of appeal.

On appeal, Ruben argues the trial court erred in failing to award him fifty percent "of the equity and/or enhanced value" of a house, which was determined by the trial court to be Claudia's separate property.[1] He claims the value of the house was enhanced through the use of community funds. Ruben thus contends he was denied his right of reimbursement. He further argues the trial court erred in requiring him to assume and pay off a $7,000.00 loan Claudia took out during the pendency of the divorce. He contends placing this liability on him "is totally without justification."

## ANALYSIS

### *Standard of Review*

A trial court is charged with dividing the martial estate in a "just and right" manner. *Gardner v. Gardner*, 229 S.W.3d 747, 756 (Tex. App.–San Antonio 2007, no pet.); *see* TEX. FAM. CODE ANN.

---

[1] Ruben has not raised an issue contesting the trial court's characterization of the house as separate property. In fact, he incorrectly states in his brief that the trial court's ruling does not "show how the court characterized the house in question." In its findings of fact and conclusions of law, the trial court concluded the house was Claudia's separate property. It is undisputed the house belonged to Claudia's parents, and that after the death of Claudia's father and during the marriage of Ruben and Claudia, Claudia's mother transferred the property to Claudia by gift deed. Property acquired during marriage by gift is separate property. *Long v. Long*, 234 S.W.3d 32, 34, 37 (Tex. App.–El Paso 2007, pet. denied). Therefore, even if Ruben's brief could be construed as raising an issue contesting the characterization of the house as separate property, the issue would be decided against him.

§ 7.01 (Vernon 2006). In dividing the marital estate, the trial court is not required to divide it equally, but may order an unequal division when a reasonable basis exists for doing so. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *Gardner*, 229 S.W.3d at 756; *Prague v. Prague*, 190 S.W.3d 31, 41 (Tex. App.–Dallas 2005, pet. denied). We will not disturb a trial court's division absent a clear abuse of discretion. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18 (Tex. App.–San Antonio 2006, pets. denied). There is no abuse of discretion if the trial court's decision is based on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). We will "consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate." *McSweeney v. McSweeney*, No. 04-06-00461-CV, 2007 WL 247677, at *2 (Tex. App.–San Antonio Jan. 31, 2007, no pet.) (citing *Murff*, 615 S.W.2d at 699; *Prague*, 190 S.W.3d at 41). The trial court's discretion in deciding and evaluating a reimbursement claim is just as broad as its discretion in dividing the marital estate. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988).

### *Reimbursement*

Ruben claims the trial court erred in its property division because he was not awarded fifty percent of the equity or enhanced value of the house in which the couple resided during marriage. Ruben in essence argues he was entitled to a reimbursement for community funds and effort expended on enhancing the value of Claudia's separate property.

The testimony established that after their marriage Ruben and Claudia moved into a house belonging to Claudia's parents. The couple lived in the house "rent free" during the entirety of the marriage except for a six-month period at the inception of the marriage. Claudia testified they were excused from paying rent in exchange for maintaining the house and paying the taxes. Ruben

disputed the existence of any such agreement, testifying they moved in at Claudia's insistence so she could care for her parents.

After Claudia's father died, the house passed to her mother. At some later point, the mother transferred the house to Claudia by gift deed, but reserved a life estate in the house. Fee simple title to the house did not vest in Claudia until her mother's death. *See Enserch Exploration, Inc. v. Wimmer*, 718 S.W.2d 308, 310 (Tex. App.–Amarillo 1986 writ ref'd n.r.e.) (holding life tenant is entitled to exclusive possession and control of property comprising life estate and remainderman is not entitled to possession until life estate terminates); *Potka v. Potka*, 205 S.W.2d 51, (Tex. Civ. App.–Waco 1947, writ ref'd n.r.e.) (holding that where mother conveyed property to daughters, reserving in herself a life estate, daughters or their heirs became cotenants in property immediately upon mother's death). In 2005, Claudia's mother took out a $57,000 loan, using the house as collateral. The parties agree that $18,000 of the loan proceeds was used for improvements to the house, $4,000-$5,000 to pay taxes on the house, and the remaining money was used by Ruben and Claudia for items including vehicles, clothes, trips, etc. The parties apparently agreed Ruben and Claudia would be responsible for the loan because the money was for their benefit. Claudia testified the $18,000 expended for home improvements was for the couple's benefit – to enable them to comply with the agreement to maintain the house and pay the taxes in exchange for not paying rent.

Ruben testified that before the loan was taken out, he had already made improvements to the house and the grounds. He claimed he paid someone to make repairs on the home, including replacing windows and doors, decorating with "custom rocks," and adding a room. Ruben also testified he made improvements to the floors, the kitchen, the porch, and the garage. Claudia agreed Ruben paid for "a little bit of repairs" "out of his pocket," but testified her mother's money was also

used for these pre-loan repairs. The only testimony about the value of the property came from Ruben. He stated that when he and Claudia moved into the house it was worth "about $60,000." When asked about the value of the house after the remodeling, but before the loan, Ruben stated the loan company valued it at $90,000.

Reimbursement claims are equitable claims that arise when the funds or assets of one estate are used to benefit and enhance another estate without the financing estate receiving some benefit to itself. *Vallone v. Vallone*, 644 S.W.2d 455, 458-59 (Tex. 1982); *Garza v. Garza*, 217 S.W.3d 538, 546 (Tex. App.–San Antonio 2006, no pet.). A right of reimbursement also arises when the community receives inadequate compensation for the time, talent, and labor it used to benefit or enhance one spouse's separate estate beyond whatever care and expenditures were necessary to maintain and preserve it. *Id.* A reimbursement claim is measured by the enhancement value to the benefitted estate. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985). Enhanced value is determined by "the difference between the fair market value before and after any improvements made by the community during the marriage." *Vickery v. Vickery*, 999 S.W.2d 342, 371 (Tex. 1999); *Garza*, 217 S.W.3d at 546. This measurement is applied whether the situation involves the payment of a purchase money debt or a capital improvement. *Penick*, 783 S.W.2d 197; *Garza*, 217 S.W.3d at 546.

However, in deciding the value of a claim for reimbursement, the benefits to the payor estate must be offset against the benefits to the payee estate. *Id.* In other words, the trial court should not merely return to the spouse seeking reimbursement the actual amount advanced without regard to the benefits that spouse might have received by virtue of the advancement. *Id.* The trial court should also consider "all the facts and circumstances and determine what is fair, just, and equitable."

*Penick*, 783 S.W.2d at 197. And, it is not simply a "balancing of the ledgers between the marital estates." *Id*. at 198.

Ruben, as the party claiming reimbursement, bears the burden of establishing his claim. *See Garza*, 217 S.W.3d at 546. This burden includes establishing the net benefit to Claudia's separate estate, *Vallone*, 644 S.W.2d at 459, and the offsetting benefit to the community estate. *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 665 (Tex. App.–San Antonio 1990, no writ).

Ruben has not sustained his burden. He testified that when they moved into the house in 1996 it was valued, in his estimation, at $60,000, and that after he expended funds for improvement but before Claudia's mother received the loan in 2005, the loan company valued it at $90,000. He did not establish the net benefit to Claudia's separate estate nor the offsetting benefit the improvements bestowed on the community estate. It is undisputed that Ruben and Claudia lived in the house without paying rent for almost the entirety of their marriage. This certainly benefitted the community – it was not required to pay for housing for the duration of the marriage. And, given that Ruben and Claudia lived in the house after Ruben's improvements, it was to their benefit to make it livable and comfortable. Moreover, Claudia testified Ruben expended only "a little bit" money on the improvements, and her mother's money was also used to pay for the home improvements. These were facts and circumstances the trial court was entitled to consider in determining what was fair and equitable with regard to Ruben's reimbursement claim. *See Penick*, 783 S.W.2d at 197; *Garza*, 217 S.W.3d at 546. Accordingly, we hold the trial court did not abuse its discretion in failing to award Ruben reimbursement monies for improvements he allegedly made to the house.

***Unjust Division***

Ruben also contends the trial court erred in ordering him to assume the $7,000 loan taken out by Claudia during their separation. In his brief, Ruben states the ruling was "totally without justification." He argues that because the trial court made temporary orders requiring him to pay Claudia $400 a month for four months as temporary spousal support, and there was no pleading or evidence he was in contempt of that order or any evidence on the issue of continued spousal support, there was no basis to support the court's order that he assume the debt.

We begin by noting there is no indication in the record the trial court ordered Ruben to assume the debt based on contempt of any temporary order, nor is there anything to support his claim that the trial court ordered him to assume the debt as spousal support. Rather, the trial court found the loan was a community debt and, the final decree, which divides the property, simply orders Ruben to assume the debt as part of the division of the marital estate. We must therefore determine if the trial court's division was disproportionate and if so whether it constituted a clear abuse of discretion according to the "just and right" standard, not whether it erred in ordering Ruben to pay the debt based on contempt or spousal support.

An evaluation of a trial court's "just and fair" division typically begins with the values of the various marital assets. *Redeaux v. Redeaux*, No. 09-06-084-CV, 2007 WL 274728, at *4 (Tex. App.–Beaumont Feb. 1, 2007, pet. denied) (mem. op.). Here, however, the record does not include the value of many of the marital assets such as: an industrial drill, two washer and dryer sets, three air conditioner units, an aquarium, a desk, items and cash in the parties' sole control, two computers, two bedroom sets, a wooden dining room set, a filing cabinet, two flat-bed trailers, the furniture in Claudia's house, and a mini bar. Nor is there any evidence in the record about the parties' credit card

indebtedness, though the final decree references such debt. Absent these valuations, Ruben cannot demonstrate from the record that the trial court erred in its division of the marital estate, including the order that he assume the $7,000 loan. *See McSweeney*, 2007 WL 247677, at *2 (holding party who complains of trial court's division must demonstrate from evidence in record that division was so unjust as to be abuse of discretion); *Prague*, 190 S.W.3d 41 (same). Without such evidence we cannot say the division of the marital estate was disproportionate, much less an abuse of discretion. *See Redeaux*, 2007 WL 274728, at *4.

However, assuming the division was disproportionate and favored Claudia, we still cannot hold the trial court abused its discretion. Only the parties testified at trial. Claudia testified she did not work until about a month before the final hearing and had to take out the loan for her subsistence during the pendency of the divorce. According to Claudia, without the loan she would have lost the house because it was used to collateralize the $57,000 loan taken out by her mother in 2005. It appears from the record that Ruben supported himself during the separation by working as a school bus driver and by operating a body shop in which Claudia claimed in interest. Ruben only paid Claudia two months of the court-ordered temporary spousal support, which amounted to $800, despite having been ordered to pay her four months of temporary spousal support, which would have amounted to $1,600.

We hold the trial court, which was the sole judge of the credibility of the witnesses, did not abuse its discretion in ordering Ruben to assume the $7,000 loan, even if it resulted in an unequal division of the marital estate. *See Murff*, 615 S.W.2d at 700 (noting trial court in divorce case has opportunity to observe parties on stand and determine credibility); *see also City of Keller v. Wilson*,

168 S.W.3d 802, 819 (Tex. 2005) (holding reviewing court cannot impose own opinions on credibility of witnesses and weight to be given their testimony contrary to those of fact finder).

## CONCLUSION

We hold Ruben has not established the trial court clearly abused its discretion. Accordingly, we overrule his issue and affirm the trial court's judgment.


Steven C. Hilbig, Justice