# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00736-CV

**William Henry Jackson, Appellant**

**v.**

**Patricia Jackson, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 09-1932-FC1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

William Henry Jackson appeals a final divorce decree that awarded his former spouse, Patricia Jackson, the entirety of the community interest in her teacher retirement account. Contending that the trial court abused its discretion in making this award, William[1] appeals. We will affirm the judgment.

## BACKGROUND

After thirty-three years of marriage, William filed a petition for divorce from Patricia in June 2009. Patricia counter-petitioned. There were no minor children of the marriage at the time, and the parties subsequently managed to agree to a division of most of the marital estate. It was agreed that William would keep his business—he was a self-employed contractor who taught

---

[1] Because the parties shared a common surname during the proceedings below, we will identify them by their first names for clarity.

automotive classes at Raytheon but also earned income from maintaining the Williamson County show barn and running a lawn and landscaping business. The parties further agreed that Patricia would keep the car that she used and that William would keep two vehicles he used for his business as well as two recreational vehicles (one of which he had been using as his residence since moving out of the marital home in August 2009). Patricia was to receive the marital home. The evidence reflected that this disposition of the home was consistent with a previous agreement whereby Patricia became the sole owner of the home in exchange for refinancing the mortgage in May of 2009 to obtain cash to pay tax debts that William had incurred by failing to withhold taxes from his business income. As a result of the refinancing, William had received $90,094.89, $40,000 of which he used to pay the tax debt, $23,272 of which he paid to Patricia as her share of the net, and the remainder of which he had retained.

For about fifteen years leading up to the divorce proceeding, the parties had maintained largely separate finances—they had separate bank accounts and credit cards and they had each paid different bills to cover their family's living expenses, with Patricia covering the mortgage on their house, health insurance and life insurance premiums, groceries, and a car she used, while William paid for utilities and cable, performed repair work around the house, and also funded three or four family vacations and an unspecified number of other family outings. As part of their agreed property division, William and Patricia agreed that each would keep the accounts and debts opened and incurred by that party. This included credit-card debt totaling nearly $80,000 that William had incurred on his personal and business credit cards. Patricia testified that she had been unaware of this credit-card debt until after William had filed for divorce. She testified that she had "rarely" used

2

credit cards after the parties split their finances and that she had paid off her credit-card balances as they came due.

William and Patricia did not reach agreement, however, with respect to community interests in time shares they had purchased—neither had a preference regarding how to dispose of such property, which William testified he had usually "traded out" in order "to get other properties" for family vacations and for business trips—and Patricia's retirement account. Patricia had worked as a school teacher for roughly 29 years and contributed to the Texas Teacher Retirement System. In 2006, she had taken retirement and begun drawing a monthly annuity in a net amount of approximately $2,500 that would continue through her life. At that time, Patricia had begun working in a part-time job with the Round Rock Independent School District assisting special-needs students and earning around $33,000 annually. However, she testified that this part-time job was to be terminated at the end of 2010 because the school district was going to replace it with a full-time position that she would be unable to pursue because of her retirement status. Thereafter, she explained, her chief employment option was substitute teaching for approximately $1,000 per month. Patricia further explained that, as a teacher, she had been required to contribute "the maximum amount" to her teacher retirement account, that she had no other retirement fund, and that she was ineligible to collect social security due to the nature of her past employment. It was undisputed that the retirement account was community property, and William insisted that he should receive half of it.

Two evidentiary hearings were held. Patricia presented evidence concerning her earning prospects compared to William's. The evidence reflected that William's annual earnings

in each of 2007 and 2008 were between roughly $92,000 and $95,000 from Raytheon and between $9,500 to $14,300 from Williamson County, and that he had received still more income from his lawn-mowing business. Patricia also presented evidence concerning the monthly social security benefits to which William would be entitled if he retired at age 62 ($1,282), 67 ($1,791), or 70 ($2,430). At time of trial, Patricia testified, William was 57 years of age. William claimed that he did not currently have any plans to retire, would work as long as he could, and "could not afford a retirement program" other than social security.

The trial court rendered a final divorce decree dividing the property in accordance with the parties' agreement, awarding the time shares to William, awarding the entirety of Patricia's teacher retirement account to her, and purporting to award William "his social security benefits." On William's request, the trial court entered findings of fact and conclusions of law. The findings reflected that the community estate included Patricia's teacher retirement pension of "2517.31/ net monthly" and "Petitioner's Social Security" in the amounts previously stated. The findings further reflected that, in dividing the community estate, the court considered the parties' agreed property division, "[t]he disparity of income in favor of [William]," "[t]he tax implications of the mismanagement of the parties' community estate by [William]," "[w]asting and improperly depleting community assets by [William]," William's "significant credit card debt incurred . . . without the knowledge or consent of [Patricia]," the parties' respective earning capacities, and "[t]he similar amount of retirement available to each party."

William filed a "motion for rehearing," which was overruled by operation of law. This appeal ensued.

4

## ANALYSIS

In three issues, William asserts that the trial court abused its discretion in awarding the entire community interest in Patricia's retirement account to her because (1) it failed to determine the total value of the retirement account at the time of the dissolution of marriage, which, in his view, rendered the evidence supporting the property division factually insufficient; (2) it considered William's future social security benefits in dividing the community estate; and (3) it disproportionately divided the community estate in a manner that is manifestly unjust to William.

We review the district court's property division under an abuse-of-discretion standard. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the district court's decision, we engage in a two-pronged inquiry, determining whether (1) the district court had sufficient evidence upon which to exercise its discretion, and (2) the district court erred in its application of that discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). To determine whether the evidence is factually sufficient, we weigh and consider all the evidence in the record. *Id.* at 589-90. When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When an appellant attacks the factual sufficiency of an adverse finding on an issue for

5

which he had the burden of proof, the appellant must demonstrate that the "adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must not merely substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

A trial court in a divorce proceeding "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party." Tex. Fam. Code Ann. § 7.001 (West 2006). Only community property is subject to division; the district court cannot divest a spouse of separate property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). In dividing the community estate, the district court may properly consider many factors, including the spouses' capacities and abilities, business opportunities, education, relative financial condition and obligations, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699. And, "the consideration of a disparity in earning capacities or of incomes is proper and need not be limited by 'necessitous' circumstances." *Id.* "[I]t is presumed that the trial court exercised its discretion properly." *Id.* at 699 (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)).

Section 6.711 of the family code requires that when a party in a suit for dissolution of marriage requests findings of fact and conclusions of law, the trial court state in writing its findings concerning "(1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented." Tex. Fam. Code Ann. § 6.711 (West 2006). William's contentions regarding his first issue—complaining of the trial court's asserted failure to find the value of Patricia's teacher

6

retirement account—center on the fact that the trial court found, in regard to the value of Patricia's account, only the net amount of each monthly annuity payment but not a lump-sum total net present value of the account as of the time of divorce. William contends that without specific findings as to "the actual market value of the retirement account," the court lacked factually sufficient evidence to divide the marital property in a just and right manner.

We first question whether William has preserved this complaint, given that both parties at trial presented evidence and argument regarding Patricia's retirement solely with reference to her monthly annuity amount. In any event, we cannot conclude that the trial court abused its discretion in this regard. The evidence relevant to the value of Patricia's teacher retirement account was undisputed. Counsel for both parties questioned Patricia about the amount of the monthly payments she received, and her testimony was consistent with a "Verification of Monthly Payments" that she entered into evidence without objection. It showed that she would receive monthly payments from the teacher retirement account in the amount of $3,059.29 gross—$2,517.31 net—for the rest of her life. Neither party introduced or sought to introduce any other evidence regarding the teacher retirement account. William neither pleaded nor introduced evidence regarding a lump-sum value of the teacher retirement account, or otherwise complained of its valuation in terms of monthly payments instead of a total lump sum. Because there was no evidence disputing the value of the teacher retirement account, the trial court was not obligated to state its finding as to the value of the account, *see* Tex. Fam. Code Ann. § 6.711, nor was it obligated to describe the value of the account as a present lump-sum rather than the per-month values adduced at trial. *See Burney v. Burney*, 225 S.W.3d 208, 215 (Tex. App.—El Paso 2006, no pet.) ("It is the responsibility of the parties

7

to provide the trial judge with a basis upon which to make the division."); *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.) ("When a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property.").[2] We overrule William's first issue.

In his second issue, William complains that the trial court abused its discretion by considering his future social security in dividing the community estate. He first asserts that the trial court "improperly awarded Appellant William Jackson his social security, in violation of the prohibition against dividing social security as marital property." William observes that the Social Security Act, 42 U.S.C.A. § 407 (West 2011), contains an anti-assignment provision that has been construed as preventing social security benefits from being "subject to division under community property laws due to federal preemption." *Richard v. Richard*, 659 S.W.2d 746, 749 (Tex. App.—Tyler 1983, no writ). As a formal matter, we agree that William's social security benefits were not community property subject to division. However, as William acknowledges, "errors in the valuation of property do not require reversal unless, because of such errors, the

---

[2] The sole cite that William provides in support of the contention that the trial court was required to calculate a "market value" or "net present value" of the teacher retirement account is Justice Stewart's concurring and dissenting opinion in *Finn v. Finn*, 658 S.W.2d 735, 749 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Justice Stewart's opinion does state that "[a]ll assets of the community estate are valued as of the time of dissolution of the marriage." However, this portion of *Finn* involved valuing the husband's present interest in the law firm in which he was a partner. The wife "hotly contested" the value of the husband's interest in the law firm, and argued that the trial court erred by instructing the jury to disregard goodwill and future earning capacity from the valuation of the community interest in the husband's law practice. *Id.* at 739-40. Justice Stewart disagreed with the majority's holding that goodwill could not be properly considered in determining the value of the community's interest in the law firm. *Id.* at 749. The case does not appear to speak to the duty of a trial court to make further calculations of value and include them in written findings when it is presented with unchallenged evidence of a monthly payment.

division made by the trial court is manifestly unjust." *Von Hohn v. Von Hohn*, 260 S.W.3d 631, 641 (Tex. App.—Tyler 2008, no pet.) (citing *Cook v. Cook*, 679 S.W.2d 581, 585 (Tex. App.—San Antonio 1984, no writ)); *see Prague v. Prague*, 190 S.W.3d 31, 38 (Tex. App.—Dallas 2005, pet. denied) (if characterization error is established, trial court must determine whether the error caused the trial court to abuse its discretion). In the end, the trial court reached the correct result by "awarding" William the entirety of the social security benefits that were his in the first place.

William also suggests that the trial court's "award" or consideration of his social security benefits in the community-property division in itself skewed its analysis of whether to award the community interest in Patricia's retirement account entirely to her. Although *Richard* holds that social security benefits may not be *divided*, per se, 659 S.W.2d at 749, courts may *consider* a spouse's future social security benefits among the many factors bearing upon a just and right division of the community estate. *See Prague*, 190 S.W.3d at 35 (affirming trial court judgment that disproportionately divided the community estate in part because the "value of appellant's social security benefits is much greater than the value of appellee's social security benefits"); *Phillips v. Phillips*, 75 S.W.3d 564, 573 (Tex. App.—Beaumont 2002, no pet.) (considering value of social security and earning potential compared to value of teacher retirement account).

William must explain how the trial court's consideration of his future social security benefits resulted in a manifestly unjust division. *See Von Hohn*, 260 S.W.3d at 641. As previously noted, "the similar amounts of retirement available" to the parties was only one of several factors

on which the trial court relied when dividing the community estate. The court also considered "[t]he disparity of income in favor of [William]" in light of evidence that Patricia would earn roughly $1,000 per month as a substitute teacher ($12,000 annually) and that she had limited marketability with respect to other jobs. Meanwhile, there was evidence that William was earning upwards of $100,000 annually and, at age 57, could continue working and earning for several more years at that rate. The trial court also made findings to the effect that William had mismanaged and wasted community assets and incurred tax liabilities that were community debts. All of these findings are unchallenged on appeal. In this context, we cannot conclude that the trial court's decision was outside the bounds of its discretion in making a "just and right" property division. We overrule William's second issue.

For the same reasons, we also overrule William's third issue, a general complaint that the trial court abused its discretion in awarding Patricia the entirety of her teacher retirement account.

## CONCLUSION

Having overruled each of William's issues, we affirm the trial court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 3, 2011

10